## CHARLES F. SWIGART

### v.

## EDWIN S. HAWLEY.

*Filed at Ottawa January 18, 1892.*

1. REAL ESTATE BROKER—*right to commissions—finding purchaser.*
Where a broker employed to sell real estate performs his part of the
contract by finding and introducing a purchaser therefor, which pur-
chaser negotiates with the principal and comes to an agreement with
him respecting the price and terms of sale, and which purchaser is
ready, able and willing to carry out such agreement with the principal,
the principal can not evade payment of the commissions agreed on, by
refusing, without a good reason, to make a conveyance to such pur-
chaser. This is so even though the principal's title is defective, and
even though he have no title, or though the broker had agreed to take
his commissions out of the money, or had agreed to charge no com-
missions unless a sale was actually made.

2. INSTRUCTION—*conveying an inference—misleading.* On the trial
of an action brought° by a real estate broker against his principal to
recover commissions for finding a purchaser, the court, in one of its
instructions, submitted the question whether the failure to complete
the sale was the fault of the plaintiff or of the purchaser, but failed to
submit whether it was the fault of the defendant, by that or any other
instruction: *Held,* that the instruction was calculated to mislead the
jury, as leaving the impression that the failure to consummate the sale
was due to the fault of the defendant.

3. Where an instruction groups together a number of facts or cir-
cumstances similar to or identical with those disclosed by the evi-
dence, and, assuming or taking for granted the existence of such facts
or circumstances, draws a legal conclusion therefrom, an improper
impression may be made upon the minds of the jury, unless some other
instruction leaves it to them to determine for themselves the existence
of the facts or circumstances so assumed to exist.

4. SAME—*opinion of court on the facts, where evidence is conflicting.*
Where the evidence is such that there may be a difference of opinion
as to a state of fact, it is error to allow any opinion of the court to be
obtruded upon the jury in an instruction, to influence their determi-
nation, especially when the evidence is close and conflicting.

5. SAME—*abstract proposition.* It is not always erroneous to give an
instruction which states a mere abstract proposition of law. Such an
instruction may be so qualified or explained by others as to be harm-
less in its effect.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. S. P. McCONNELL, Judge, presiding.

Messrs. BEAM & COOK, and Mr. HENRY D. BEAM, for the appellant:

As to the right of the plaintiff to recover, see *Beauchamp* v. *Higgins,* 20 Mo. App. 514; *Fultz* v. *Winner,* 34 Kan. 576; *Wylie* v. *Bank,* 61 N. Y. 415; *Watson* v. *Brooks,* 11 Ore. 271; *Monroe* v. *Snow,* 131 Ill. 126; *Hines* v. *Henry,* 36 N. J. L. 328; *Read* v. *Rann,* 10 B. & C. 438; *Broad* v. *Thomas,* 7 Bing. 99; *Dalton* v. *Irvin,* 4 C. & P. 289; *Bull* v. *Price,* 7 Bing. 237; *Alder* v. *Boyle,* 4 C. B. 635; *Toombs* v. *Alexander,* 101 Mass. 255; *Walker* v. *Tirrell,* 101 Miss. 257; *Short* v. *Millard,* 68 Ill. 292; *Evans* v. *Hughey,* 76 id. 115; *Pierce* v. *Powell,* 57 id. 325; *Hoyt* v. *Shipherd,* 70 id. 309; *Carter* v. *Webster,* 79 id. 435; *Kerfoot* v. *Steele,* 113 id. 610.

An instruction which assumes controverted facts is erroneous. *Chambers* v. *People,* 105 Ill. 409; *Yundt* v. *Hartrunft,* 41 id. 9; *Railroad Co.* v. *Moranda,* 108 id. 581; *Coon* v. *People,* 99 id. 368; *Olsen* v. *Upsahl,* 69 id. 273.

Messrs. CRATTY BROS., for the appellee:

Appellee was solicited by appellant to find a purchaser for the property in question. He spent between two and three weeks searching for one. He had, at his own expense, advertised, had taken Howe out to examine the property, and after these two or three weeks of work he brought the parties together on the contract of sale. His position was that of a broker. When he found a purchaser who was able, willing and ready to carry out the purchase agreed upon, according to these terms, his services were complete, his commissions were then earned and he was entitled to his pay, even though the purchase was not consummated. *Kock* v. *Emmerling,* 22 How. 69; *McGavock* v. *Woodlief,* 20 id. 221; *Doty* v. *Miller,* 43 Barb. 529; *Monroe* v. *Snow,* 131 Ill. 126.

The request to examine the record after a change had been made in the title was a reasonable one. *Allen* v. *Atkinson,* 21 Mich. 351.

It was not necessary that the contract of purchase between the parties should be in writing. *Sayre* v. *Wilson,* 86 Ala. 151.

There is no question that the law is correctly stated in this instruction, it bearing principally upon the point that the principal can not evade liability for commissions when the failure to consummate the sale is entirely due to his fault. If a broker has fulfilled on his part, he will be entitled to his commissions, although the sale is not consummated by reason of the principal's title proving defective. *Knapp* v. *Wallace,* 41 N. Y. 477; *Goodridge* v. *Holladay,* 18 Ill. App. 363; *Doty* v. *Miller,* 43 Barb. 529; *Kock* v. *Emmerling,* 22 How. 69; Mechem on Agency, sec. 967.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action in assumpsit brought by appellee against appellant to recover $2500.00, alleged to be due as commissions for the sale of real estate. Plaintiff below recovered judgment, which has been affirmed by the Appellate Court.

In January, or February, 1889, appellant employed the appellee, as broker or agent, to sell for him a tract of land of about 80 acres. The price, for which the property was to be sold, was $116,130.00. The terms as originally fixed were $16,130.00 payable in cash, $2500.00 in cash or in a short time after the sale, $17,500.00 on or before one year after the sale, and $80,000.00 on or before five years, the latter amount to be secured by mortgage on the land. Appellee claims that, through his efforts, two parties, named Collins and Howe, agreed to purchase the property. No written contract of sale was executed by appellant, nor was any written contract of purchase executed by Collins and Howe. No sale was actually carried out. Appellant and Collins and Howe were brought

into communication with each other by appellee. The abstract of title was delivered by appellant to appellee to be submitted to the attorney of Collins and Howe on or about February 13, 1889. The parties met in the office of said attorney on the morning of February 23, for the avowed purpose of closing the matter up. Owing to a disagreement which then took place, the proposed sale failed of consummation.

Appellant did not own the title to the property at this time, but he had agreed to buy 145 acres, of which the eighty acres were a part, from Moses B. Maclay of New York, and was expecting to make his cash payment to Maclay's attorney in Chicago out of the money to be received from Collins and Howe. It was understood between all the parties, that the sale by Maclay to appellant, and the sale by appellant to Collins and Howe, were to be carried out at the same time. Maclay was to make a deed to one Wiltshire, who was to hold the title for appellant and execute to Maclay a purchase money mortgage for $80,000.00, which was to be assumed by Collins and Howe. The purchase from Maclay was to be closed at twelve o'clock on February 23. Prior to the latter date, much negotiation and many interviews were had between appellant and appellee on the one side, and Collins and Howe and their attorney on the other.

It is clearly proven that the $2500.00 was to be paid to appellee by Collins out of the purchase money. The evidence tends to show, that it was important for the appellant to be ready to consummate his trade with Maclay at the appointed time; that there had been some changes made in the terms of sale at the request of Collins and Howe; that, at their request, it became necessary to re-draw some of the papers, and to make further examinations as to the title, or as to the condition of the record showing the title; that appellant left the meeting, held at the office of the attorney of Collins and Howe in the forenoon of February 23, at twenty minutes before twelve o'clock, taking his papers with him; that he went to a

Bank with a view of obtaining funds, and thence to the office of Maclay's attorney, where he closed his purchase without the aid of Collins and Howe. Appellant claims, that the proposed sale to Collins and Howe fell through by reason of unreasonable conduct on their part; and appellee claims, that it fell through because appellant was unwilling to do what was reasonable and fair on his part. The evidence was close and conflicting as to which party was to blame for the failure to complete the transaction. One of the questions for the jury was, whether Collins and Howe for good reasons refused to carry out the purchase, or whether it was the fault of appellant that the sale was not closed. Under these circumstances it was important that the jury should be correctly instructed.

The seventh and eighth instructions given to the jury on behalf of the plaintiff, or, if they may be so considered, the seventh and eighth paragraphs of the instruction read to the jury by the court, were as follows:

"Where a principal contracts with an agent or broker to sell lands for or on behalf of the principal, and the broker performs his part of the agreement by finding and introducing a purchaser therefor, which purchaser negotiates with the principal, and comes to an agreement with him respecting the price and terms of sale, and which purchaser is ready, able and willing to carry out such agreement with the principal, then in such case the principal can not evade payment of commissions to the agent by refusing to make conveyance to such purchaser.

"And this would be true even though the principal's title were defective, and even though he had no title at all. It would also be true even though the agent had agreed to take his commissions out of the purchase money, and even though he agreed to charge no commissions unless a sale were actually made, for it is the law that a principal in such a case has no right to, himself, arbitrarily or wrongfully refuse to con-

summate such sale, and then say for that reason he will not pay commissions to the agent.";

We find no fault with the law of these instructions, considered as abstract propositions. But when the jury applied these propositions to the evidence before them, and to the solution of the question most prominently presented to their minds, they must have understood the court as holding, that the failure to carry out the sale was due to the fault of the defendant alone. Especially was this a natural conclusion, when these instructions were read in connection with the second instruction given for the plaintiff, which was as follows:

"2. If you believe, from the evidence, that the defendant employed the plaintiff as a real estate agent to sell for him, the defendant, the land in question at a specified price, and that the plaintiff entered upon such employment, and did, on behalf of him, the defendant, find and negotiate with Mr. Collins and Mr. Howe as proposed purchasers, and did bring them and the defendant together, and that they and the defendant did agree upon the price and terms of such proposed sale, and that they, said Collins and Howe, were ready, able and willing to make such purchase according to such agreement, and that it was no fault of theirs or of the plaintiff that such sale was not finally made, then such facts would entitle the plaintiff to recover for his services in that behalf."

This second instruction standing alone may not be objectionable, but when it was considered in connection with the two instructions above quoted, the three together were calculated to prejudice the jury against the defendant. By the second it is left to the jury to say, whether or not it was without the fault of the plaintiff or of Collins and Howe, that the sale was not finally made, while neither the seventh and eighth instructions, nor any other instruction which was given on either side, left it to the jury to find from the evidence whether or not the failure to complete the purchase was without the fault of the defendant. On the contrary, the seventh

and eighth instructions virtually assume, that the defendant refused to consummate the sale, and evaded the payment of commissions to the plaintiff by declining to make a conveyance to the purchasers.

These instructions are similar in character to the one which was quoted and commented upon in *C. & N. W. Ry. Co.* v. *Moranda, Admx.* 108 Ill. 576. In regard to the instruction so given in the *Moranda* case we said: "Where there is evidence before a jury upon which it is legally admissible there may be difference of opinion, it is error to allow any opinion of judge or court to be obtruded upon the jurors to influence their determination. There was, here, such evidence, in our opinion, and the giving of the instruction was, therefore, clearly erroneous." The language thus quoted is precisely applicable to the case at bar. Where the facts are controverted, and should be submitted to the jury for their determination, it is error to assume the existence of such facts, as is done in the seventh and eighth instructions. (*Chambers* v. *The People*, 105 Ill. 409; *Coon* v. *The People*, 99 id. 368; *Olsen* v. *Upsahl*, 69 id. 273; *Yundt* v. *Hartrunft*, 41 id. 9.)

We do not hold that it is always erroneous to give an instruction which simply states an abstract proposition of law. Such an instruction may be so qualified or explained by others in the series as to be harmless in its effects. But where an instruction groups together a number of facts or circumstances similar to, or identical with, those disclosed by the evidence, and assuming, or taking for granted, the existence of such facts or circumstances, draws a legal conclusion therefrom, an improper impression may be made upon the minds of the jury, unless some other instruction leaves it to them to determine the existence of such facts or circumstances.

For the error thus indicated the judgments of the Appellate and Circuit Courts are reversed, and the cause is remanded to the Circuit Court.

*Judgment reversed.*