108    423
r206s  523

## Illinois Central R. R. Co. v. George F. Wade.

1. MASTER AND SERVANT—*Where the Injury is the Result of the Combined Negligence of Master and Fellow-Servant.*—Where the injury is the result of the combined negligence of the master and a fellow-servant, the master is liable.

2. EXCEPTIONS—*Must be Taken to Each Ruling of the Court.*—An exception can not be taken to more than one ruling, but must be taken to each ruling as it arises.

3. INSTRUCTIONS—*Singling Out One Witness, When Not Reversible Error.*—While an instruction should ordinarily not single out and call attention to the evidence of a particular witness, yet where there is only one witness to whom it has any application, it is not reversible error.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed June 18, 1903. Rehearing denied July 6, 1903.

**Statement by the Court.**—Appellee, an employe of appellant as a bridge builder, and while at work under the control and direction of appellant's foreman in building a railroad bridge across Boyer river near Denison, Iowa, was injured by being struck and thrown from the bridge by some heavy iron clamps and chain attached to a derrick, which was at the time being operated by appellant's servants under the orders of its foreman. He brought suit against appellant for his injuries and recovered a verdict and judgment thereon for $7,000, from which this appeal is taken. At the close of the plaintiff's case and again at the close of all the evidence, the defendant requested that the jury be instructed to find for the defendant, which requests were respectively refused and exceptions preserved.

At plaintiff's request the court, among other instructions, gave the following, to wit:

" 2. The court instructs the jury that one servant of a corporation in whom it, the corporation, vests the control and direction of other of its servants in and about the work which they are required by the corporation to do, is, as to such servant or servants whom he so controls or directs, the representative of the master while so exercising such direction and control, and is not a fellow-servant, and is not, under such a state of facts, if proven by the evidence, in the same line of employment as the servant or servants whom he so directs or controls. So, in the case now before the jury, if it appears from the evidence that William H. Miller was the assistant foreman of the defendant company, and that it delegated to him the control and direction

of the men employed in and about the work mentioned if the evidence, and if it further appears therefrom that the plaintiff was one of such servants and was under the direction and control and subject to the orders of said Miller, and that while exercising due care for his own safety, and as the servant of the defendant company, the plaintiff was injured, through the negligence or as the result of the negligence of the said Miller, while he, said Miller, was exercising such direction and control over the work mentioned in the evidence and over the plaintiff as a servant of the defendant corporation, then the said William H. Miller was in law the representative of the defendant company while exercising such direction and control, and was not the fellow-servant of the plaintiff, and was not, under such a state of facts, if proven by the evidence, in the same line of employment as the plaintiff.

"4.   The court instructs the jury that if they believe from the evidence that the injuries suffered by the plaintiff were caused by the negligence of the assistant foreman of the company while in the control and direction of the men engaged in and about the work mentioned in the evidence, and if they further believe from the evidence that the plaintiff was in the exercise of due care and was subject to the orders of the assistant foreman while exercising direction and control over the men, then the said Miller was in law the representative of the company, and his negligence, if any, is chargeable to the company, although it may further appear from the evidence that said assistant foreman sometimes did the work of an ordinary laborer.

" 6.   In determining the amount of such damages which the plaintiff may be entitled to recover in the case, if any, the jury have a right to, and they should take into consideration all the facts and circumstances as proven by the evidence before them; also the nature and extent of the plaintiff's physical injuries, if any, so far as the same are shown by the evidence; also the plaintiff's sufferings, if any, resulting from such physical injuries, if any, as the jury may believe from the evidence, plaintiff has sustained; also the extent or the permanence of such injuries, if any.

" And the jury may find for the plaintiff such sum as, in the judgment of the jury, under the evidence and instructions of the court in this case, will be a fair compensation for the injuries, if any, plaintiff has sustained, so far as such damages and injuries, if any, are claimed and alleged in the declaration on file in this cause.

"8. The court instructs the jury that the mere fact that a witness testified that he has been in the business of gambling is no justification for the jury to disregard the testimony of such witness, if such witness has testified to the truth of the facts surrounding the accident in question, and is corroborated by other credible evidence."

W. A. HOWETT, attorney for appellant; J. G. DRENNAN, of counsel.

MOSES, ROSENTHAL & KENNEDY, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

There is no direct claim that appellant was not negligent, but on the merits the only argument is that appellee assumed the risk, was guilty of contributory negligence which caused his injuries, and, if there was negligence, it was that of appellee's fellow-servant. Upon the point of assumed risk the contention is, in substance, that the great preponderance of the evidence shows that at the time of the injury the work of operating the derrick was being done in the usual and ordinary manner in which it had been done for the several years in which appellee had been in appellant's employ; that the work was done in a rush and a hurry; that appellee was an experienced man in this kind of work and knew the manner in which it was done, and that if there was danger connected with it appellee knew it when he entered appellant's service, and knew it still better as he continued to work for appellant from year to year, and must therefore be held to have assumed whatever hazard there was in his employment. It is true the evidence shows that the work in question, at the time appellee was injured, was being done in a rush and hurry; that it was ordinarily so done; that appellant had for several years previously been engaged at similar work for appellant, and was an experienced man therein; but as to the manner in which the derrick with the clamps and chain attached thereto, and which caused the injury, was usually and ordinarily operated, there is a conflict in the evidence. The proof on

behalf of appellee tends to show that it was customary to operate the derrick so that the chain and clamps which were attached to the boom in swinging back and forth during the progress of the work, would be sufficiently raised to go above any person who might be upon the bridge engaged in the work of its construction. The proof on behalf of appellant tends to show that it was customary in the swinging of the boom to raise the chain and clamps just enough to clear the work, and that any one on the bridge engaged in its construction was supposed to keep watch of its movements and look out for himself. At least two of appellant's witnesses, however, say that it was customary to raise the clamps so as to pass any obstruction on the work, and one says that "men would be an obstruction."

We have carefully considered the details of the evidence on this point, and are of opinion that, while the greater number of witnesses support appellant's contention, it can not be said that the finding of the jury in favor of appellee is clearly and manifestly against the evidence. If the work was not being done, at the time of appellee's injury, in the usual and customary way, then any hazard therefrom, unless appellee knew of and appreciated it (and the weight of the evidence tends to show he did not), was not assumed by him. We think the verdict on this point should not be disturbed.

As to the next claim, namely, that appellee's own want of care caused his injury, there is also a conflict in the evidence. There is evidence tending to show that appellee, when struck by the clamps, was standing erect on one of the girders of the bridge near where he knew that every two or three minutes the clamps were being swung back and forth, and where they were plainly visible to him had he looked, and directly in their path; also that he was given ample warning so he could have avoided being struck by stooping down or stepping to one side. This evidence is directly contradicted in so far as it tends to show that appellee knew he was in the path of the clamps, and as to

whether any warning given was heard by or made known to appellee in time to enable him to avoid injury. He testifies that, at the time, he was standing erect and on the girder of the bridge; had been engaged in and had finished putting in some bolts of a floor beam, and when struck was starting to the next point; also that in his experience in bridging he never, before this occasion, saw clamps hanging down like these that struck him. As we have seen, other evidence, some of it offered by appellant, corroborates him in this regard. He also says that he didn't hear any one call to him to get out of the way, and that he didn't see any signal given. The evidence of appellant shows that there was more or less pounding going on all the time; an engine was running, the boom was swinging, and "there was a great deal of noise." Appellee had the right to presume, from his past experience, that the clamps would be raised high enough to pass above his head, and the jury might well have found, as we think, after a careful reading of the evidence, that he did not hear any warning given in ·time to avoid injury, and that he did not see any signal by way of warning which may have been given. The whole evidence bearing on appellee's care considered, we are of opinion the verdict should not be disturbed.

The other claim made on the merits, namely, that if there was negligence which caused appellee's injury, it was that of a fellow-servant, Riordan, whose duty it was to raise the clamps as the boom was swung, is not, in our opinion, sustained by the record. It may be conceded, for the purposes of this decision, that Riordan was negligent in this regard and his negligence contributed to appellee's injury, but that would not relieve appellant. The jury might well have found from the evidence that Miller, who was appellant's foreman and controlled the swinging of the boom, knew the danger to which appellee was exposed in case the boom was swung as appellant claims it was ordinarily swung, and as Miller himself swears it was always swung, namely, "just high enough to clear the girder."

If Miller knew this danger and knew that appellee was

exposed to it, then certainly he was negligent in giving the order to swing the boom as he did, without, at the same time, directing that the clamps be raised so as to go above appellee's head.   This negligence no doubt, as we think is shown by the evidence, was an efficient cause of and contributed to the injury, and appellant would be liable therefor notwithstanding the negligence of a fellow-servant also contributed thereto.   Pullman, etc., Co., v. Laack, 143 Ill. 242–61;  Amer. Ex. Co. v. Risley, 179 Ill. 295–9;  R. R. Co. v. Hines, 183 Ill. 482–5.

In procedure it is claimed a number of errors have intervened, the first of which is that the court erred in refusing to admit in evidence certain statements in writing signed by appellee's witness Wolfington, which contained language claimed to be contradictory of his evidence given on the trial.   The statements in question were presented to the witness on cross-examination by defendant's counsel, and he then admitted they were signed by him.   They were marked for identification, and when the defendant reached its side of the case its counsel offered the statements in evidence for the purpose of impeaching the witness, because they were claimed to contradict his evidence, but upon objection they were ruled out.   The matter is thus generally stated by appellant's counsel, and, as stated, the claim seems to have some support by text writers and certain adjudications of the courts.   1 Greenleaf on Evid. (13th Ed.), p. 523;  2 Phillips on Evid. * 963;  Queen's Case, 2 Brod. & Bing. 286;  Momence Stone Co. v. Groves,.197 Ill. 88–92.

This general statement does not, however, fully present the matter as it was before the trial judge.   The record shows that the witness' attention was called to certain language in the first of the statement, the same being read to him in the presence of the jury, and which tends to contradict his evidence.   The witness, on being questioned, admitted this particular language was in the statement, but says some of it was not right.   The witness was not thus questioned about the other statement—was only asked if he signed it, and admitted he did.   The first statement

also refers to certain statements made by three persons named Hayes, Miller and McAlley, and says "he (the witness) fully agrees in same and makes same his statement in fact." Certain statements purporting to be made by F. D. Hayes, but signed by T. W. Hayes, W. H. Miller and Joseph McAlley, but in no other way identified nor called to the attention of the witness, appear to have been offered in connection with and presumably as part of the first statement of the witness. The second statement signed by the witness purports to be signed by six other persons. These two statements were together offered in evidence by defendant's counsel and objected to by appellee's counsel in the following language, viz: "Certainly we object to the statements as a whole." This object was sustained, and we think properly sustained. In so far as counsel had asked the witness with regard to his alleged contradictory language in the first statement, such contradiction, in that regard, was as fully before the jury as if the statement itself had been put in evidence, and there was, therefore, no necessity for the presentation of that matter to the jury to offer that part of the statement in evidence. R. R. Co. v. Feehan, 149 Ill. 202–14; Swift v. Madden, 165 Ill. 41–8.

It appears from an examination of the record that the learned trial judge did not exclude the statements because a part of the alleged contradiction in the first statement was already before the jury, nor because that part of the same statement purporting to be signed respectively by Hayes, Miller and McAlley was not fully identified nor called to the attention of the witness, nor because the second statement purports to be signed by six other persons besides the witness Wolfington, but rather, if we construe the ruling correctly, because the statements in question were those of a witness instead of a party to the suit. It is immaterial, however, what may have been the reason of the trial court for excluding the statements if the ruling was correct as the matter was presented. The statements were offered together, not separately, and the objection to them made was "to the statements as a whole." As we

have seen, the court was not wrong in excluding that part of the first statement which was already before the jury. A single exception only was preserved as to the ruling of the court refusing to admit in evidence both statements. The court being right as to one of the statements, and the exception being as to the ruling upon both, must fail, even if it be conceded that the court was in error as to the second statement, which it is unnecessary to, and we do not decide. R. R. Co. v. Couley, 148 Ill. 490–3; Flaningham v. Hogue, 59 Ill. App. 313–20; Continental I. & L. Society v. Schubnell, 63 Id. 379.

It is also claimed that the second and fourth instructions set out in the statement preceding this opinion are erroneous because, it is said, they in effect, tell the jury that the relation of fellow-servant did not exist between the appellee and the witness Miller, who was appellant's foreman, but to this we can not assent. A reading of the instructions, as we think, is a sufficient answer to this claim. It is also said that these instructions do not limit the jury, in arriving at their verdict, to the negligence alleged in the declaration. If this is true, as claimed, still appellant can not be heard to complain, for the reason that appellant's instruction No. 5, which was given, has the same defect. Moreover, it is well settled that all the instructions in a given case must be considered as a series, and when so considered we think that the jury could not have been misled by these instructions in any of the respects claimed, for the reason that they were, in our opinion, fully supplemented by other instructions given, which charge the jury correctly as to all the issues of the case.

The sixth instruction is also criticised as allowing the jury to look to the allegations of the declaration, and not to the evidence, in determining the damages and the injuries the plaintiff had sustained, but we think that the instruction is not fairly subject to this criticism. In any event, we are of opinion, from the whole record, it is apparent that the jury were controlled by the evidence in fixing the amount of the appellee's damages, and there could have been no prejudice to appellant by the instruction.

The eighth instruction is also criticised because it singles out the testimony of a particular witness, and counsel say it assumes that the witness has testified to the truth of the facts referred to in the instruction. Swigart v. Hawley, 140 Ill. 186, is relied upon in this connection, but we can not, from a reading of the case, see that it has any application. Ordinarily an instruction should not single out and call attention to the evidence of a particular witness, but in this case there was no other witness than Wolfington to whom it had any application. Where such was the fact and the witness was actually named in the instruction, the Supreme Court held it was not error to give an instruction which referred to the witness by name. (Ammerman v. Teeter, 49 Ill. 400.) We think there should not be a reversal because of this instruction.

Finally, it is claimed that the damages are excessive, but we are not prepared to yield assent to this claim after a careful reading of the evidence. Appellee was injured when in the prime of life and suffered greatly therefrom—was confined in hospitals and under treatment continuously from July 20, 1900, the date of his injury, to March 25, 1901. His occupation was that of a railroad man, which required the use of both his arms. As the result of his injury his right arm, from the elbow down, was paralyzed, which is permanent and not curable, and he suffered pain from time to time very often up to the time of the trial, and had difficulty in sleeping by reason thereof. He also suffered other injuries, and can not work at his chosen occupation because of the permanent nature of his injuries. The whole evidence considered, we think that the damages awarded are not so excessive as to justify our interference therewith. The judgment of the Circuit Court is therefore affirmed.