THE CHICAGO CITY RAILWAY COMPANY

*v.*

ELLEN McLAUGHLIN, EXRX.

*Filed at Ottawa June 19, 1893.*

1. EVIDENCE—*of negligence in failing to stop grip car.* In an action against a city street railway company to recover damages for negligently colliding with a horse car at an intersection of the tracks, and thereby causing the death of the plaintiff's intestate, it is competent to show, as bearing on the question of negligence, that defendant's grip car was not so near the crossing when the horse car was crossing the cable track as to make it impossible to stop before it came in contact with the horse car.

2. SAME—*opinion of witness as to distance in which cable car can be stopped.* In such case, a witness testifying as to the possibility of stopping a cable car within a stated distance, can answer as to the source and basis of his knowledge. If such witness has been in the service of street car companies, a reference by him to previous experience and observation will not be improper, because it may tend to show that he was qualified to give evidence as to the distance within which it *is* possible to stop such a car.

3. SAME—*plat of streets and intersections.* In an action to recover for an injury resulting in death, caused by a collision of a cable car with a horse car, a plat of the streets, etc., is properly admissible in evidence, when a surveyor testifies that it is a correct survey of the intersections of the two roads, and that it is a ground plan of streets and intersections of streets, and also that it shows the position of the car tracks that cross, etc.

4. PRACTICE IN SUPREME COURT—*a party can not complain of ruling in his favor.* The ruling of the court refusing to allow the plaintiff to introduce certain evidence being a ruling in favor of the defendant, he can not be heard to complain of it.

5. PRACTICE—*remarks of court reflecting on witness.* On a trial in which the witness showed a disinclination to answer a certain question, the court asked him a question on the subject, when defendant's counsel stated that the witness had already answered that. The court replied to counsel, "I don't think he answered it fairly," meaning that the question had not been fully answered: *Held,* that such remark was not sufficient to justify a reversal of the judgment.

6. SAME—*reprimanding counsel for improper utterances.* On the cross-examination of a witness called by the plaintiff, defendant's coun-

23—146 ILL.

sel questioned the witness as to what he had previously sworn to before the coroner, referring to what purported to be a written statement of the testimony theretofore taken before the coroner's jury. Before closing his case the plaintiff's counsel remarked to the court, that before going on with the case he would like to read the testimony of the witness before the coroner, to show that it does not contradict him. The court refused to allow the request, when counsel for defendant asked the court to rebuke plaintiff's counsel for the statement made by him. There was nothing to show that the plaintiff's offer was not made in good faith, or that he was not honestly mistaken as to his right to read it, and the jury were instructed to look solely to the evidence for the facts: *Held*, that there was no error in the refusal of the court to reprimand plaintiff's counsel.

7. It must be left largely to the discretion of the trial court to determine whether an offer to introduce evidence is made in a legitimate way and for a legitimate purpose, or whether it is made for the purpose of improperly influencing the jury, by uttering in their presence what they ought not to hear.

8. Same—*evidence curing errors.* Where plaintiff's counsel offers to read in evidence the testimony of one of his witnesses taken on a coroner's inquest, for the avowed purpose of showing that it does not contradict his testimony on the trial, stating, in the presence of the jury, that there is no repugnance in his testimony, if the defendant afterwards examines the shorthand reporter, and proves from the shorthand notes what the witness actually did say before the coroner, this will counterbalance any injurious effect of any contrary intimation contained in the previous offer of plaintiff's counsel.

9. Witnesses—*impeachment—proof of contradictory statements of witness.* On the trial of a case growing out of the death of a person through alleged negligence in the management and operation of a cable car, the jury were instructed, that if they believed, from the evidence, that any of the witnesses had made statements under oath at the coroner's inquest contradictory of the statements made upon the stand, they would have the right to take into consideration such contradictions, together with all the other facts and circumstances in the case, in determining the value of the evidence and the weight to be given to it.

10. Same—*impeaching by showing contradictory testimony.* A witness may be impeached by establishing an inconsistency between his testimony at the trial, and the contents of a deposition sworn to by him. So the evidence of a witness taken before a coroner can be used to contradict the evidence of the same witness subsequently given.

11. Same—*practice in respect to laying foundation to impeach witness.* The ordinary rule is, that the deposition, letter or other writing

which is to be used for impeaching purposes shall be read by the cross-examining counsel as a part of his own evidence, when he presents his side of the case. It may sometimes be read at once, at the request of the cross-examining counsel, when it appears to be necessary to found certain questions upon its contents.

12. The party seeking to impeach a witness by asking him if he did not testify differently before the coroner, may, at the proper time, introduce the evidence taken before the coroner, for the purpose of contradicting such witness; but the party calling the witness will have no right to introduce such evidence for the purpose of showing that it does not contradict his own witness.

13. SAME—*sufficiency of answers, a question of law.* The sufficiency of an answer of a witness to a question is a matter for the determination of the court, and not the jury.

14. SAME—*compelling answer.* The refusal of a witness to answer questions pertinent to the issue, put to him in a proceeding before a court which has jurisdiction of the controversy, is a contempt of court. If the witness be competent, and the question pertinent to the issue, he may be compelled to answer the same.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

Mr. W. J. HYNES, for the appellant:

To entitle the plaintiff to recover, the intestate adult "must be free from any want of ordinary care" for his own safety. *Railroad Co.* v. *Johnson,* 103 Ill. 512; *Railroad Co.* v. *Avery,* 8 Bradw. 133; *Railroad Co.* v. *Dougherty,* 12 id. 181.

The law places the burden of proving the exercise of reasonable and ordinary care by the intestate for his own safety, upon the plaintiff. *Kipperly* v. *Ramsden,* 83 Ill. 354; *Peoria* v. *Simpson,* 110 id. 294; *Railroad Co.* v. *Gregory,* 58 Ill. 272; *Railroad Co.* v. *Andreas,* 16 Bradw. 292.

It is good practice to reverse a case for the misconduct of counsel, if it is such, in the opinion of a court of review, as may have improperly influenced the result. *Meredith* v. *People,* 84 Ill. 480; *Tucker* v. *Hennicker,* 41 N. H. 318; *Wolf* v. *Morris,* 74 Ill. 386; *Paper Co.* v. *Banks,* 15 Neb. 20; *Railroad*

*Co.* v. *Baylis*, 75 Ala. 466 ; *Railroad Co.* v. *Carlosa*, 77 id. 443 ; *Berry* v. *State*, 10 Ga. 522 ; *State* v. *Claudius*, 1 Mo. App. 551 ; *Hermies* v. *Vogel*, 87 Ill. 242 ; *Kepperly* v. *Ramsden*, 83 id. 354.

The law will not permit the judge to bias the jury by his own opinion as to any fact in controversy.    *Andreas* v. *Ketcham*, 77 Ill. 377.

Owing to the regard which is paid by juries to the opinion of the court, he should use great caution in expressing his opinion on any question which it is the province of the jury to determine.    *Fire Ins. Co.* v. *Pulver*, 126 Ill. 329 ; *Nuttel* v. *Chicago*, 9 Bradw. 534.

Messrs. MURPHY & CUMMINGS, and Messrs. GIBBONS & KAVANAGH, for the appellee :

When error will not require a reversal, see *Railroad Co.* v. *Warner*, 108 Ill. 538 ; *Town* v. *Hadley*, 131 id. 640 ; *Hodges* v. *Percival*, 132 id. 53.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court :

This is a suit brought by the appellee, as executrix of the estate of her deceased husband, John McLaughlin, against the appellant, the Chicago City Railway Company, to recover damages for the death of her said husband.    Verdict and judgment in the Circuit Court were in favor of the plaintiff. Said judgment has been affirmed by the Appellate Court, and the case is brought here by appeal from the latter court.

At the time of the accident, the deceased was engaged in driving a horse-car for the West Chicago Street Railway Company, and was killed, at the intersection of Randolph Street with Wabash Avenue in Chicago, in a collision between the grip-car of one of appellant's cable-car trains running north on said Avenue, and the horse-car which he was driving westward upon said street.    The occurrence took place about seven o'clock in the morning while there were as yet but few persons upon the streets.    The rear end of the horse-car was struck

by the grip-car and knocked off the track. The force of the concussion threw the deceased over the dash-board, and the horses becoming frightened dragged the car over him, so that he was killed.

The judgment of the Appellate Court is conclusive upon the facts. Our attention is not called to any error in the giving or refusal of instructions. Some of the witnesses were allowed to state in what distance the grip-car could be stopped, going at the rate of speed at which it was then travelling. Appellant claims that it was error to permit these witnesses to state, that they had theretofore seen grip-cars stopped at a certain distance at the point of intersection between the cable-car tracks and the horse-car tracks where the accident happened. It was competent to show, as bearing upon the question of negligence, that the grip-car was not so near the point where the horse-car was crossing the cable track, as to make it impossible to stop it before it should come in contact with the horse-car. A witness, who testified as to the possibility of stopping within a stated distance, could answer as to the source and basis of his knowledge. The witnesses referred to had been in the service of street car companies; and a reference to previous experience and observation was not improper, because it tended to show that they were qualified to give evidence as to the distance within which it was possible to stop such a car.

It is objected, that the court allowed a certain plat to be introduced "without any proof to show that it correctly represented the situation and location of objects shown thereon, at the time of the accident." We think that there was evidence enough to justify the admission of the plat for the purpose for which it was introduced. A surveyor testified: "The plat presented is a correct survey of those intersections; it is a ground plan of streets and intersections at the intersection of Wabash and Randolph, also showing the position of the car tracks that cross," etc. The plat was not intended to be

a pictorial or photographic representation of the cars, horses, men and other objects as they appeared when the collision took place.

One of the defendant's witnesses was asked, upon his cross-examination, if a certain paper shown to him contained his examination as previously taken before the coroner's jury. A number of questions were addressed to him calling upon him to answer, *first,* whether he did, as matter of fact, swear to the statements contained in the paper before the coroner's jury; *second,* whether the statements therein contained were true or false. The witness had been the driver or manager of the grip-car at the time of the accident, and had been an eye-witness of the occurrences mentioned in the writing which was shown to him. He somewhat persistently limited his answers to those portions of the questions, which had reference to the correctness of the writing as a statement of what he had formerly sworn to, but ignored the inquiries which had reference to the truth or falsity of the contents of the writing. The trial judge, apparently with a view of pointing out to the witness the distinction thus indicated, asked him a question for the purpose of directing his attention to the fact, that he was desired to say whether the account, given in the paper of the occurrences which he had witnessed, was correct or not, independently of the question whether the paper was or was not a correct re-production of his former examination. Counsel for defendant, before the witness made reply, said to the court: "He has answered that." In response to the counsel the court said: "I don't think he answered it fairly." To this remark of the court the record recites that there was "exception by counsel for defendant;" and the making of the remark is here insisted upon as error.

It is claimed on behalf of the appellant, that the words thus used by the court reflected upon the credibility and fairness of the witness, and had the effect of prejudicing the jury against him. Reference is made to the case of *Andreas* v.

*Ketcham*, 77 Ill. 377, where it was said, that the law would not permit a judge "to bias the jury by his own opinion as to any fact in controversy which had to be established by evidence." Reference is also made to the case of *Birmingham Fire Ins. Co.* v. *Pulver*, 126 Ill. 329, where it was said: "Owing to the regard which is paid by jurors to the opinion of the judge, he should use great caution in expressing his opinion on any question which it is the province of the jury to determine." We cannot see, that there was here the expression of an opinion by the court upon any fact in controversy, or upon any question coming within the province of the jury to determine.

The question raised by the remark of counsel was, whether a previous answer made by the witness was a sufficient answer to the question addressed to him. The sufficiency of the answer of a witness is a matter for the determination of the court, and not the jury. The refusal of a witness to answer questions pertinent to the issue, put to him in a proceeding before a court which has jurisdiction of the controversy, is a contempt of court. If the witness be competent, and the question pertinent to the issue, he may be compelled to answer. (Rapalje's Law of Witnesses, sec. 303, par. 2, and cases cited in notes). The reply of the court to the remark of counsel was merely the announcement of the court's decision, that the question asked had not been answered by the witness. It would have been better to have used some other word than "fairly." But after examining all the testimony of the witness, including the running fire of controversy and dialogue between opposing counsel, and counsel and the court, we do not think that there was any intention to reflect upon the credibility of the witness, or that the jury could have so understood what was said. The word, "fairly," was intended to designate merely the fullness, or sufficiency, or responsiveness of the answer. But even if the words used be regarded as designating a want of frankness, they were applied only to the mode of answering, and not to the subject-matter of the answer

itself.   It cannot be said that, if a court compels a reluctant witness to answer a legitimate question, such act of compulsion will authorize a reversal upon the ground that it has a tendency to discredit the witness in the opinion of the jury. In the *Pulver* case, *supra*, it was said : "Every unguarded expression of the judge in stating reasons to counsel for his rulings, cannot be treated as a ground for granting a new trial.   To do so would be to greatly embarrass the administration of justice."   Upon referring to the instructions given to the jury, we find that their language was sufficient to guard against any erroneous impressions as to the credibility of the witnesses for the defendant.   We do not regard the making by the court of the remark thus commented upon, as sufficient to justify a reversal of the judgment.

As a part of his original case, counsel for plaintiff below examined a witness named Knight, who was driving a horse-car eastward at the time of the accident, and witnessed the collision which resulted in McLaughlin's death.   Upon cross-examination, counsel for defendant questioned Knight as to what he had previously sworn to before the coroner, referring at the same time to what purported to be a written statement of the testimony theretofore taken before the coroner's jury.   At the opening of court on the next morning counsel for plaintiff, before proceeding with his evidence which was not yet closed, said :   "Before going on with the case I would like to read the testimony of John Knight before the coroner, to show that his testimony there does not contradict his testimony here." Exception was taken by defendant's counsel to the statement thus made, and the court refused to allow plaintiff's counsel to read the proffered testimony.   Counsel for defendant then said :   "I ask the court to rebuke counsel for that statement, and to rule upon its propriety."   The bill of exceptions then shows the following entry :   "Because the court takes no action in the matter, attorney for defendant excepts."   We do not understand, that the exception, as thus set forth in the record,

is to the language used by the court in overruling the offer
to read the testimony, but merely to the fact that the court
remained silent when asked to rebuke or reprimand plaintiff's
attorney. The ruling of the court which refused to allow the
testimony to be read was in favor of the defendant, and, there-
fore, he cannot be heard to complain of it. But the failure of
the court to administer the rebuke is claimed to be error, upon
the alleged ground, that "the intention must have been to ex-
cite in the minds of the jurors a belief that counsel for appel-
lant had been misrepresenting the testimony of Knight before
the coroner, and that he held evidence in his hand to show
that."

The questions of defendant's counsel were evidently asked
with a view of laying a foundation for contradicting the wit-
ness. A witness may be impeached by establishing an incon-
sistency between his testimony at the trial and the contents of
a deposition sworn to by him. The evidence of a witness taken
before a coroner can be used to contradict the evidence of the
same witness subsequently given on a trial in court. (Rapal-
je's Law of Witnesses, sec. 205; *People* v. *Devine*, 44 Cal. 452;
*United States Life Ins. Co.* v. *Vocke*, 129 Ill. 557). But the
ordinary rule is, that the deposition or letter or other writing,
which is to be used for impeaching purposes, shall be read by
the cross-examining counsel as a part of his own evidence
when he presents his side of the case. It may sometimes be
read at once at the request of the cross-examining counsel,
when it appears to be necessary to found certain questions
upon its contents. (Rapalje's Law of Witnesses, sec. 206).
While, therefore, it would have been allowable for defendant's
counsel, after plaintiff had rested, to introduce the evidence
taken before the coroner for the purpose of contradicting plain-
tiff's witness if in his opinion it would have had that effect,
yet the plaintiff had no right to introduce it for the purpose
of showing that it did not contradict his own witness. Hence,
the ruling of the court was unquestionably correct. But it

does not follow that plaintiff's counsel should have been reprimanded because he offered to introduce testimony which was inadmissible. There is nothing to show that his offer was not made in good faith, or that he was not honestly mistaken as to his right to read it. It must be left largely to the discretion of the trial court to determine whether an offer to introduce evidence is made in a legitimate way and for a legitimate purpose, or whether it is made for the purpose of improperly influencing the jury by uttering in their presence what they ought not to hear. We are unable to say that there was here any abuse of the discretionary power thus lodged in the trial court.

We are satisfied that the defendant was not injured by what took place in reference to this matter, because an instruction was given that, "in considering and deciding the case, the jury should look solely to the evidence for the facts ;" and because, after plaintiff's counsel had offered to read the coroner's minutes of the testimony taken before him, and after plaintiff had rested and the defendant had begun to present its evidence, the counsel for defendant was permitted to examine the short-hand reporter who took the testimony of the witness, Knight, before the coroner, and to prove from the short-hand notes what the witness did actually say before the coroner. If the evidence of the reporter, given with a transcript of his notes in his hand, showed any contradictions, the defendant had the benefit of them ; and they counter-balanced the injurious effect of any contrary intimation contained in the previous offer of plaintiff's counsel. The jury were instructed, that, if they believed from the evidence that any of the witnesses had made statements under oath at the coroner's inquest contradictory of the statements made upon the stand, they would have a right to take into consideration such contradictions, together with all the other facts and circumstances in the case, in determining the value of their evidence and the weight to be given to it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*