## THE MOMENCE STONE COMPANY

*v.*

## LOUIS A. GROVES.

*Opinion filed June 19, 1902.*

1. EVIDENCE—*what tends to support allegation of negligence.*   Evidence that an inclined track from the stone quarry to the crusher was uneven and made of different kinds of rails, which could not be bolted together properly, and that it was not on a good foundation, the ties being blocked up from time to time as they gave way, tends to support an allegation that the track was negligently and defectively constructed and caused an extra strain upon the hook used in drawing loaded cars up the incline.

2. SAME—*what tends to show that hook was defective.*   In an action by an employee for injuries sustained by the breaking of a hook used in pulling cars of stone up an inclined track, testimony of the "hooker-on," who picked up the pieces of the hook after the accident, that there was a visible flaw and that he could see that the break was old and rusty, tends to show that the hook was defective and that defendant should have known that fact.

3. SAME—*when question of contributory negligence is properly left to jury.*   Whether the plaintiff was guilty of contributory negligence is properly left to the jury under evidence that when the hook attached to the car going up the inclined track broke, he was stand-

ing beside the track near the junction of a curve, with a high wall behind him; that the track was uneven, and that, thinking the car would jump the track, he attempted to cross and was injured, whereas he would not have been had he stayed where he was.

4. EVIDENCE—*when restriction on cross-examination is proper.* If, on cross-examination of the plaintiff's witness, he is presented with a written statement and asked if the signature thereto is not his, which he admits, it is proper for the court to refuse to allow the defendant to inquire of him as to the contents of the statement.

5. INSTRUCTIONS—*what not a proper subject for instruction.* If the broken hook which caused the plaintiff's injury is in the possession of the defendant but is not produced, although called for by the plaintiff, defendant's counsel testifying as to his reasons for not producing it, whatever inference would naturally arise in the minds of the jury from the refusal to produce it, in view of the testimony and explanation of counsel, should not be interfered with by an instruction that no inference would arise from such refusal.

*Momence Stone Co.* v. *Groves,* 100 Ill. App. 98, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. JOHN SMALL, Judge, presiding.

F. J. CANTY, and J. A. BLOOMINGSTON, for appellant.

H. K. & H. H. WHEELER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Appellate Court for the Second District affirmed a judgment recovered by appellee in the circuit court of Kankakee county against appellant for damages on account of personal injuries sustained by him while in its employ.

The defendant was engaged in the business of crushing stone, and maintained a track up an incline from its quarry to the stone crusher. Cars loaded with stone were drawn up this track to the crusher by means of a cable attached to the cars by a hook. Plaintiff was working for defendant, and while standing by the side of the track

the hook broke and a loaded car started rapidly down
the incline toward him. A sudden warning was given,
and plaintiff, turning around, saw the car coming and
tried to escape by running down the track, but was over-
taken by the car and run over and lost a leg.

At the close of the evidence the defendant moved the
court to exclude the evidence and instruct the jury to
find it not guilty, and tendered an instruction directing
such a verdict. The court denied the motion and refused
to give the instruction, and this is assigned as error. It
is insisted that the instruction should have been given,
because, first, the evidence proved, without conflict, that
the accident was the result of a latent defect in the hook;
second, that if the defect was patent, the evidence did
not show that the defendant knew or should have known
of it; third, that the plaintiff was himself responsible for
the defective condition of the hook; fourth, that he was
guilty of contributory negligence as matter of law.

In passing on the motion and instruction the court
was called upon to determine whether there was suffi-
cient evidence in favor of the plaintiff on the issue of
fact to justify the submission of such issue to the jury,
and we have no doubt that the court was right in decid-
ing that there was. The charges of negligence contained
in the declaration were, that the track was negligently
and defectively constructed and caused an extra strain
on the hook in drawing the car up the incline; that de-
fendant negligently permitted the defective and defect-
ively constructed hook to be attached to the car, and
that defendant failed in its duty of inspection of the
hook. The evidence sustained the first charge without
contradiction. The track was uneven and made of differ-
ent kinds of rails that could not be bolted together prop-
erly. It was not on a good foundation, and the ties were
blocked up from time to time as they gave way. The
track being uneven and the rails of different sizes, the
track was unfit for the use to which it was put and its

condition caused greater strain on the hook. The employee engaged in attaching cars to the cable by means of the hook, who was called a "hooker-on," picked up the broken pieces at the time of the accident and testified that there was a visible flaw; that he could see where it had been broken, and that it was an old break and rusty. This evidence tended to show both that the hook was defective, and that the defendant knew, or should have known, of the defect.

It is contended, however, that plaintiff was himself a foreman, charged with the duty of inspection, and was responsible for the defect. So far as the uneven and defective track was concerned, the evidence showed that there was a track foreman, whose duty it was to keep the track in condition, and plaintiff was not charged with that duty. The company had a manager as well as a track foreman, but the evidence showed that plaintiff was a sort of sub-foreman. The evidence in his behalf was, that his position was what was known to the workmen as a "straw-boss,"—that is, a boss without any authority,—and that what he did in the way of making minor repairs or occasionally hiring men was under express directions of the manager. The evidence did not show, without contradiction, that he was charged with the duty of looking after the hook, and he certainly was not charged with that duty respecting the track. On the question whether he was guilty of contributory negligence, the evidence was, that when the car broke loose he was standing by the side of the track, where he had been called by the manager to receive an order. The car was coming down over an uneven track, and he was near the junction of a curve and tangent with a high wall back of him. He testified that his first thought was that the car would leave the track there, and he therefore attempted to cross the track. As it turned out, if he had stayed where he was the car would not have struck him; but he is to be judged by all the surroundings in view

of the suddenness of the danger and the probabilities as they would appear to one in his situation. Under all the circumstances, with the sudden appearance of danger and the want of time for reason and reflection, the evidence raised a fair question for the jury in the first instance, which the court would not be authorized to take from them.

The following rulings on the admission of evidence are assigned as error: On the cross-examination by the defendant of the witness who picked up the broken hook, he was presented with a written statement and asked whether the signature subscribed to it was his. He admitted signing the statement, and was then asked whether it contained certain language. The court sustained an objection to the question. Defendant had a right to call the attention of the witness to the statement reduced to writing and subscribed by him, for the purpose of putting it in evidence as matter of impeachment. Having admitted that he signed the paper and made the statements contained in it, it was then competent to be used for the only purpose for which it was admissible,—that he had made a different statement out of court from the one made on the trial. The written statement was in court, and there was no attempt to have the witness examine it to refresh his recollection or to use it for any other purpose than that of contradiction. There was no error in refusing to let the defendant inquire as to its contents.

The general manager of the defendant was a witness, and testified that he was directed by the president to look over the machinery and to take no chances; that he inspected the hook carefully before the accident, and that he never had any intimation from any one or any source that it was not a good and sufficient hook. On cross-examination he was asked if he did not make a certain statement in the baggage car when going to Chicago with the plaintiff, and this statement was inconsistent

with his testimony. The question was objected to and the objection was overruled. It is urged that this was error, because the declaration of the manager in the baggage car was not a part of the *res gestœ* and was not binding on the defendant as an admission by its officer. The declaration would not be admissible on either ground, but the question was proper for the reason that the statement was contrary to what the witness had just testified to. Its purpose was to lay the foundation for impeaching evidence.

Another employee of defendant testified that he saw the hook after the accident, in the office of the defendant; that there was a dark-colored spot on the broken part, and that he noticed around the edge of it a dark-colored circle. On cross-examination the plaintiff endeavored to find out when he saw the hook,—whether on the day of the accident or at what time. It is objected that this was not cross-examination. The witness was not able to fix the time, and several questions were asked with a view to ascertain when it was. The court was right in holding the questions to be proper cross-examination.

It is argued that the court erred in refusing to give to the jury an instruction asked by the defendant, to the effect that it was under no legal obligation to produce the hook on the trial upon the demand of plaintiff or his counsel; and another instruction that the mere fact that defendant failed to produce the hook was not to be considered as any evidence of negligence on its part, and that the jury had no right to presume from such failure that the hook was defective. When the hook was picked up by the hooker-on it was delivered to the manager of the defendant and was taken to Chicago and kept by the defendant. Its counsel was notified to produce the hook upon the trial and refused to do so. The counsel was called as a witness by the plaintiff and interrogated as to the whereabouts of the hook, and he gave to the jury reasons satisfactory to himself for refusing to produce it.

The hook was in the possession of the defendant and had been ever since the accident, and whatever inference would naturally arise in the minds of the jury from the refusal to produce it, in view of the testimony and explanation of the counsel, should not have been interfered with by an instruction. It would not have been proper for the court to tell the jury that no inference would arise from a refusal to produce the hook.

One instruction is neither marked "given" nor "refused," and the bill of exceptions does not show whether it was read to the jury or not. If, as a matter of fact, it was refused, the refusal was proper on account of the instruction assuming a fact of which there was no evidence.

Complaint is also made of the refusal to give other instructions asked by the defendant, but the substance of them was included in instructions read to the jury. The court merely refused to duplicate some of the instructions, of which there were too many, and the complaint is groundless.

There is no error in the record, and the judgment is affirmed.                    *Judgment affirmed.*