FIRE ASSOCIATION OF PHILADELPHIA v. YEAGLEY.

[No. 4,760. Filed January 5, 1905.]

1. INSURANCE.—*Personal Property.—Encumbrance.—Waiver.*—Where the agent of an insurance company writes a fire policy on a stock of goods, knowing that such stock is encumbered by a chattel mortgage, and such company receives and retains the premium, such policy is valid, and there is a waiver of the provision in such policy rendering the insurance void in case of encumbrance, unless stipulated in the policy, and this is true regardless of the fact that such policy contains a further provision that the underwriting agent had no power to alter, modify or waive any provisions in such policy and that no claim could be made by assured unless such provision was indorsed on the policy. p. 390.

2. TRIAL.—*Interrogatories.—Conclusion.—Refusal to Submit.*—In an action on a fire policy, it is not error to refuse to submit to the jury the interrogatory "did the defendant's local agent have authority as such agent to consent to encumbrances on the property described in the policy, otherwise than by agreement indorsed on said policy or added thereto," since such interrogatory calls for a legal conclusion, and does not ask the jury for a "particular question of fact" as required by statute. §555 Burns 1901, Acts 1897, p. 128. p. 390.

3. SAME.—*Fire Policy.—Encumbrance.—Proofs of Loss.—Waiver.— Sufficiency of Evidence.*—Where it is shown by the evidence that the assured took out a $2,000 fire policy with the insurer's agent on July 16, 1900, and it was made payable primarily to a mortgagee; that about the middle of May, 1901, plaintiff asked for $1,000 addi-

tional, the agent sending it and stating that •the mortgage did not make any difference; on June 26, 1901, plaintiff canceled a $3,000 policy with another company and asked defendant's agent to write another, which was done; on July 2, 1901, plaintiff acknowledged receipt of such policy, and asked such agent to renew the policy expiring on the 16th, which was done, and the premium paid; on June 27, 1900, plaintiff executed a mortgage on such property and on April 11, 1901, plaintiff executed another, and some of the debts secured thereby were unpaid; a fire occurred February 17, 1902; the loss was $8,000-$8,500 and insurance $6,000; notice of loss was given to the company and duplicate proofs were given to the local agent, who sent them either to the company or to the state agent, such evidence shows that defendant knew of the mortgage when the policy was issued and premium paid, and also shows a compliance with the policy in furnishing proofs of loss.  p. 391.

4. EVIDENCE.—*Insurance.*—*Denial of Liability.*—*Waiver of Proofs.*— *Issues.*—Where, in an action on a fire policy, the plaintiff was permitted to prove that defendant's adjuster denied all liability on the policy, such was not reversible error, although the pleadings did not tender such an issue, and though from the pleadings it could not be told upon what ground such liability was denied.  p. 392.

5. SAME.—*Insurance.*—*Former Policy.*—*Renewal.*—Where it is contended by plaintiff that a fire policy sued on was a renewal of a former policy which contained a mortgage clause, it was proper to permit the introduction in evidence of such former policy, though the latter policy contained no mortgage provision.  p. 393.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by Daniel W. Yeagley against the Fire Association of Philadelphia. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Smiley N. Chambers, Samuel O. Pickens, Charles W. Moores* and *James F. Stutesman,* for appellant.

*J. T. Cox, E. T. Reasoner* and *J. W. O'Hara,* for appellee.

ROBINSON, P. J.—Suit by appellee on a policy of fire insurance upon a stock of goods. The jury returned a general verdict for appellee, and, over appellant's motions for judgment on answers to interrogatories and for a new trial, judgment was rendered in appellee's favor.

Errors are assigned (1) upon the court's refusal to strike

out portions of the second paragraph of reply to the second paragraph of answer; (2) overruling a demurrer to the second paragraph of reply to the second pargaraph of answer; (3) overruling a demurrer to the third and fourth paragraphs of reply, respectively, to the second paragraph of answer; (4) refusing to submit to the jury a certain interrogatory; (5) overruling appellant's motion for judgment on the answers to interrogatories; and (6), overruling the motion for a new trial.

The complaint avers appellee's ownership of the stock of goods, issuing of the policy (a copy of which is an exhibit), appellee's performance of all conditions, the loss, and appellant's failure to pay. Appellant answered: (1) Denial. (2) That the insurance was void because the property, when the policy was issued, was mortgaged; the policy providing: "This entire policy, unless otherwise provided by agreement indorsed hereon and added hereto, shall be void   *   *   * if the subject of insurance be personal property and be or become encumbered by a chattel mortgage." (3) A partial answer alleging other and concurrent insurance—the total insurance exceeding the value of the property—and appellant's liability only for its proportionate share of the loss, as provided by a clause in the policy requiring the loss to be borne pro rata by all companies issuing policies. Appellee replied: (1) Denial. (2) That appellant, without requiring any written application, with full knowledge of the mortgage, accepted the premium, and delivered the policy to appellee, who was never notified of the provision for a forfeiture; that the provision was in very small print; that appellee accepted the policy believing it was valid and a security against loss, and without notice from appellant, until after the loss, that the policy contained such a condition. (3) That appellant's agent wrote the policy and accepted the premium with full knowledge of the mortgage; that appellee was never notified by appellant, or anyone in its behalf, that the policy was void until after the loss. (4) That

appellant accepted the premium, and underwrote and delivered the policy to appellee, with notice of the mortgage, and without notice to appellee that the provision in the policy for a forfeiture in case the property was mortgaged was not waived by appellant.

1.    The policy provides that, if fire occur, the insured shall give immediate notice, make an inventory showing the quantity and cost of each article and the amount claimed thereon, and within sixty days after the fire, unless the time is extended in writing by the company, render a verified statement to the company, stating the insured's knowledge and belief as to the origin of the fire, etc.; that the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proofs of loss have been received by the company.    The policy also provides: "This policy is made and accepted subject to the foregoing stipulations, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power, or be deemed or held to have waived such provision or condition, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Upon the question of the waiver of the condition in the policy in regard to encumbrances on the goods insured, whether the supposed waiver be by appellant, or by the agent who issued the policy, the case is controlled by *German-American Ins. Co. v. Yeagley* (1904), 163 Ind. 651.

2.    There was no error in refusing to submit the following interrogatory to the jury:  "Did the defendant's local

agent have authority as such agent to consent to encumbrances on the property described in the policy, otherwise than by agreement indorsed on said policy, or added thereto?" It can not be said that it asks the jury to find specially upon a "particular question of fact." §555 Burns 1901, Acts 1897, p. 128, §1. If it could be said to embrace questions both of law and fact, it was proper not to submit it. *Korrady* v. *Lake Shore, etc., R. Co.* (1891), 131 Ind. 261. But it seems the interrogatory calls for a legal conclusion and for that reason was properly refused. *Chicago, etc., R. Co.* v. *Luddington* (1894), 10 Ind. App. 636; *Keeley Brewing Co.* v. *Parnin* (1895), 13 Ind. App. 588; *Chicago, etc., R. Co.* v. *Ostrander* (1888), 116 Ind. 259; *Ohio, etc., R. Co.* v. *Stansberry* (1892), 132 Ind. 533; *Roller* v. *Kling* (1897), 150 Ind. 159.

3. There is evidence that on July 16, 1900, appellee was a merchant of Thorntown, Indiana, and on that date took a policy for $2,000 on his stock with appellant company through one Underwood, appellant's agent at LaFayette, Indiana. Appellee informed the agent that the stock was mortgaged, and, when the policy was sent by the agent to appellee, it contained the clause, "payable in case of loss to E. C. Voris, as his interest may appear." In April, 1901, appellee moved his stock to Bunker Hill, Indiana, and about the same time appellee sent the policy to Underwood to be transferred, which was done by Underwood, and returned by mail to appellee. About the middle of May, 1901, appellee wrote to the same agent for $1,000 insurance. The agent answered and asked appellee if the mortgage on the stock was paid off, to which appellee replied that it was not. The agent then sent the policy requested, stating that he did not think the mortgage would make any material difference. Afterwards, on June 26, appellee wrote to Underwood, stating that he had canceled a policy that another agency had issued, leaving only the $3,000 issued by Underwood, and asking Underwood to write $3,000 more

insurance. Policies were issued, but for what amount does not appear, and afterwards, at Underwood's request, they were returned to him; he stating, in answer to why he wanted them returned, that it was hard for him to get a policy on a stock that had a mortgage on it. On July 2, 1901, appellee wrote Underwood that he "received policy O. K.," and asking him to "renew the policy that runs out on the 16th," having reference to policy in appellant company dated July 16, 1900. On July 16, 1901, Underwood sent to appellee the policy in suit. The premium of $20 was paid. On April 11, 1901, appellee executed to E. C. Voris a mortgage on his stock to secure three promissory notes executed by appellee to Voris—one dated January 12, 1900, and due in one year; one dated June 27, 1900, and due in eighteen months; and one dated April 11, 1901, and due in twelve months; the mortgage reciting that the first two of the above notes were at that time secured by a chattel mortgage on the stock executed June 27, 1900. The mortgage was in force, and a part of the debt secured was unpaid, when the policy in suit was issued. The property insured was destroyed by fire February 27, 1902. Its value was $8,000 to $8,500 and the total insurance was $6,000. Notice of the fire and loss was given, and duplicate proofs of loss were made, one of which was delivered to appellant's agent at Peru, Indiana, who testified that he sent it either to the company or the state agent—he did not remember which.

Taking all the evidence in the record, and the inferences that may properly be drawn from the facts proved, we think it can be said that there is evidence that appellant's agent had notice of the existence of the mortgage when he issued the policy, and that there was a sufficient compliance with the provision in the policy relative to furnishing proofs of loss by appellee.

4. It can not be said that the furnishing of such proofs of loss was unnecessary because of the denial of liability by

appellant's adjuster, for the reason that it does not appear upon what grounds a liability was denied, and when, with reference to the time for furnishing proofs of loss, the waiver is claimed to have become effective.     See *Fidelity & Casualty Co.* v. *Sanders* (1904), 32 Ind. App. 448.     Moreover, the pleadings tender no issue that the furnishing of proofs of loss was waived by appellant.     But because no such issue was tendered, it was not reversible error to permit appellee's attorney to testify that he and appellee made a demand for the amount of the policy, and that the adjuster said "they were not legally liable, and would not pay anything—the amount of the policy or any other amount."

5.     Evidence as to the former policy was properly admitted.     There was some evidence that the policy in suit was a renewal of the former policy issued by the same agent in July, 1900, in which there was a recognition of the existence of the encumbrance.     The policy in suit was issued in response to a letter from appellee requesting that the agent renew the policy of July 16, 1900.

We find no error in the record.     Judgment affirmed.