## GROSSNICKLE v. AVERY.

[No. 12,275. Filed June 2, 1926. Rehearing denied December 22, 1926. Transfer denied April 26, 1933.]

*Raymer & Olds* and *R. E. Proctor,* for appellant.

*State & Harman* and *Harman & Jay,* for appellee.

MCMAHAN, P. J.—Appellee, while riding a bicycle on one of the streets in the City of Elkhart, was injured by reason of a collision with an automobile driven by appellant. Appellee, at the time of the collision, was traveling west while appellant was traveling east. Appellee filed a complaint alleging that his injuries were caused by reason of appellant's negligence. From a judgment in favor of appellee appellant appeals and contends that the court erred in overruling his motion for a new trial. Appellee insists that the evidence is not all in the record and that no question is presented for our consideration.

The judge certifies that the bill of exceptions contains all the evidence given and offered in the cause; that such bill is correct to his "personal" knowledge, except certain exhibits, the originals of which were lost and which he certifies he did not see or inspect during the trial; that on application by appellant and after hearing evidence copies of such exhibits were incorporated in the bill of exceptions. The fact that copies of

such lost exhibits were incorporated in such bill which the trial judge certifies contains all the evidence given and offered in the cause is sufficient to bring the copies of the lost exhibits into the bill though the judge has no personal knowledge that they are correct copies of the originals.

Appellant contends the court erred in refusing to strike out certain parts of the deposition of R. G. Shiffler, a witness for appellee. This witness did not see the collision. He testified that he lived near the place of the collision; that he went out and saw the people gathered there; saw several automobiles; saw one automobile which was identified as the one driven by appellant, and saw "skid-marks" which he described and which it could be inferred from the evidence were made by appellant's automobile.

The fact that the witness did not see the collision did not render him incompetent to describe what he saw in the way of marks on the pavement. This evidence was proper as tending to show how far appellant's automobile ran after the brakes were applied, as bearing on the speed that appellant was driving, and also as tending to show whether appellant was north or south of the center of the street. The weight to be attached to the evidence was for the jury.

A few days after the accident a lawyer, representing appellant's insurance carrier, interviewed several people who witnessed the accident and procured from them written statements. The persons whose statements were so taken were witnesses for appellant. Later this lawyer, as a witness for appellant, testified concerning the making of these statements, the purpose of his testimony being to impeach the testimony of the persons who had made the written statements. On cross-examination he was asked if at the time he interviewed these witnesses and took their statements he was

not acting as the attorney and representative of the insurance carrier, and over appellant's objection he was required to answer. He then testified that when he took these statements he was representing the insurance company and that in a conversation with appellee at the time he took appellee's written statement, he told appellee he was representing the insurance company. There was no error in the action of the court in overruling the objection to this testimony. This evidence was proper as tending to impeach the testimony of the witness by showing an interest in the transactions, about which he had testified. The weight of the testimony was for the jury. The fact that this lawyer was afterwards employed by appellant and was one of the lawyers who appeared for appellant in this action did not alter the situation. The jury was correctly and fully instructed as to the purpose of this testimony and told that it could only be considered for the purpose of affecting the weight of the testimony of the witness. *Moy Quon* v. *M. Furuya* (1914), 81 Wash. 526, 143 Pac. 99; *Jensen* v. *Schlenz* (1916), 89 Wash. 268, 154 Pac. 159; *Taggart* v. *Keebler* (1926), 198 Ind. 633, 151 N. E. 33, 152 N. E. 287, 154 N. E. 485. Such cases as *Inland Steel Co.* v. *Gillespie* (1914), 181 Ind. 633, 104 N. E. 76, are not in point.

The court refused to permit appellant to read in evidence certain written statements made by Jacob L. Miller and Jessie F. Smith, who were witnesses for appellee. Appellant insists these statements were admissible for the purpose of proving statements made out of court inconsistent with the testimony given by those witnesses.

These witnesses on cross-examination admitted having signed the statements bearing their respective signatures and each of them was given an opportunity to examine the statement to which their respective signatures were attached. Miller testified as to the circumstances con-

nected with the preparation and signing of his statement. Mrs. Smith, while admitting that her signature was affixed to one of the statements, said she did not know whether it was in fact her statement. These statements purported to be sworn to before a notary public, and there was evidence sufficient to sustain a finding that before these statements were signed by them, they were read by, or to, the witnesses whose signatures they bore. The court refused to allow them to be read in evidence upon the ground that the proper foundation for their admission had not been laid.

It was the theory of the trial court that it was necessary for appellant on cross-examination of the witnesses to ask them concerning the contents of their respective statements and that in the absence of such an examination they were not admissible in evidence. The court applied the rule regulating the admission in evidence of inconsistent oral statements, to the admission of written statements. This was error.

The purpose of introducing prior statements of a witness contradicting his testimony is to show that the witness is capable of making errors in his testimony; to show either "a defect in the memory or in the honesty" of the witness. The object of the rule requiring that a witness on cross-examination must be asked whether he made the supposed contradictory statement is to warn him that it will be offered against him by testimony later produced, and to give him an opportunity to deny it, if he claims not to have made it, or to explain it, if he admits having made it. This rule is by no means an immemorial tradition. Wigmore on Evidence, 2 Ed. §1026. It had its origin and birth in the responses of the Judges in 1820, in The Queen's Case, 2 B. & B. 313, and was first applied in this state in *Doe d. Sutton* v. *Reagan* (1839), 5 Blackf. 217, 33 Am. Dec. 466, where an attempt was made to impeach a witness by proving prior oral state-

ments contradictory to those made in court, and where the witness had not been asked about the previous statements. The method of laying the foundation for impeaching a witness by proving oral statements contradicting the statements of the witness while testifying is well established in this state. *Joy* v. *State* (1860), 14 Ind. 139; *Bennett* v. *O'Byrne* (1864), 23 Ind. 604; *Hill* v. *Gust* (1876), 55 Ind. 45; *McIlvain* v. *State* (1881), 80 Ind. 70; *Roller* v. *Kling* (1898), 150 Ind. 159, 49 N. E. 948; *Miller* v. *State* (1915), 183 Ind. 319, 109 N. E. 205.

Our attention, however, has not been called to any case in this state discussing the method of laying the foundation for impeaching a witness by introducing prior written statements, and after a careful search we have been unable to find an Indiana case where the question was involved.

It is not necessary in the instant case for us to determine the extent to which a witness may be cross-examined, if at all, concerning the contents of the supposed contradictory writing. All we need to determine, is whether a proper foundation was laid for the introduction of the statements of the witnesses.

In *Larkin* v. *Nassau Electric R. Co.* (1912), 205 N. Y. 267, 98 N. E. 465, a witness on cross-examination was shown a typewritten statement which he said had been written in his presence and that he had signed it without reading. It was offered in evidence and excluded, not because it had been offered out of order, but on the ground that it was incompetent. In reversing the cause the court said: "A witness cannot be impeached by statements alleged to have been made by him before or after he has testified until he has been adequately warned by the cross-examination that those statements will be later offered against him, and thus he or the party calling him be enabled to correct the testimony given or prepare a denial or an explanation of the statements. In case the state-

ments are oral, the warning is given by asking the witness, in substance and effect, if he did not at a given time and place in the presence of or to a person or persons specified make the alleged contradictory statements. . . . In case the statements are in writing and unsubscribed, the paper must be shown or read to the witness and marked for identification and, if subscribed, the signature, and in case he so demands, the paper must be shown to him. The attention of a witness having been thus called to the contradictory statements, they may be proven and introduced in evidence in the regular course of the trial. . . . The admission of the witness that he signed the written statements adequately proves them. If the witness does not admit that he signed the statements, the genuineness of the signature can be proven by anyone or in any legal way. Such proof enables the impeaching party to properly offer the paper in evidence as a part of his case, or, with the permission of the court, at any other stage of the trial. The subscription of the witness is some evidence that he made the statements or authorized them to be made for him, and testimony by him that he did not read the statements or hear them read or make them is to be given such force and effect, in connection with the subscription and other relevant evidence, as the jury see fit to accord it. . . . . When the writing so proven is offered in evidence, the court should admit it in whole or in such parts as its purpose of discrediting the witness requires or justifies. *(Hanlon* v. *Ehrich,* 178 N. Y. 474, 71 N. E. 12), and it is a firmly established rule of this state that it cannot be read to the jury, or, provided it can be produced, used as basis for a cross-examination as to its contents until it is in evidence."

In *Hanlon* v. *Ehrich* (1904), *supra,* the court, after stating the rule relative to contradictory oral statements, said: "The rule as to documentary evi-

dence, which is to be used to contradict the oral testimony of a witness, is necessarily somewhat different, and has given rise to much discussion. Letters, affidavits, written statements, verified pleadings, depositions, and previous testimony of a witness are admissible to impeach him, if they are material to the issue upon which he is testifying, and if they tend to contradict or discredit him. When such a writing contains nothing except what is clearly contradictory of material testimony given by the witness, it would seem to fall within the general rule that a writing is not only the best evidence of what it contains, but the only evidence that is legally admissible of its contents, provided always that it is in existence and can be produced. In such a case the whole of the writing should be offered in evidence before it is allowed to be read. There are, however, many instances in which the writing contains much irrelevant and even incompetent matter, in addition to some parts that are material, competent, and contradictory of the witness. In such a case the proper rule would seem to be that only the material and competent parts should be received and read in evidence. In no event, however, should the writing, or any part thereof, be read until it has been marked in evidence. If the writing contains irrelevant or incompetent matter that cannot safely be submitted to a jury, it should be marked for identification, and the competent parts thereof read into the minutes, so as to form part of the record. As a matter of strict practice, the proper time to do this is when the counsel who desires to use the evidence has the case, but the courts may, in their discretion, properly permit it as a part of the cross-examination. This last mentioned feature of practice has apparently played some part in producing the impression that it is proper to interrogate a witness as to the contents of such a paper without introducing it in evidence either as a whole or in part, and this, in turn, is probably respon-

sible for some of the apparent diversity in the decisions. That diversity is more apparent than real, however, for it is to be remembered that appellate tribunals have to deal with concrete questions presented by the records as made, and not with abstract theories based upon technically correct rules."

In *Momence Stone Co.* v. *Groves* (1902), 197 Ill. 88, 64 N. E. 335, a certain written statement was presented to a witness on cross-examination. He admitted signing it, and was then asked whether it contained certain language. An objection to the question was sustained, and in discussing the question the court said: "Defendant had a right to call the attention of the witness to the statement reduced to writing and subscribed by him, for the purpose of putting it in evidence as matter of impeachment. Having admitted that he signed the paper and made the statements contained in it, it was then competent to be used for the only purpose for which it is admissible, that he had made a different statement out of court from the one made on the trial. The written statement was in court, and there was no attempt to have the witness examine it to refresh his recollection, or to use it for any other purpose than that of contradiction. There was no error in refusing to let the defendant inquire as to its contents."

In *Chicago City Ry. Co.* v. *Matthieson* (1904), 212 Ill. 292, 72 N. E. 443, a witness for the defendant on cross-examination was shown a paper, which he read and stated he had signed. The paper was then offered in evidence, and the court held that a part of it might be read unless defendant wished to further examine about it. It was then read to the jury. On re-examination of the witness he said no part of the paper was in his handwriting except the signature; that he never read it and had no recollection of ever seeing it, and that what he stated when the paper was written was not different

from the testimony he had just given. His final testimony was to the effect that he did not state that which was written in the paper. His admission that the statement had been read to him and signed by him was held to be prima facie evidence that the statement was his own, and that it was properly introduced in evidence. In answer to the contention that it was error to permit it to be read during the cross-examination, the court said: "The proper time would have been when plaintiff presented his side of the case in rebuttal. *Chicago City Railway Co.* v. *McLaughlin* (1893), 146 Ill. 353, 34 N. E. 796. It is not a proper method to mingle testimony for the defendant with that for the plaintiff, unless there is something to warrant a suspension of the ordinary rule. In the orderly trial of a cause one party introduces his evidence and then the other party is heard, and the introduction of impeaching evidence during the examination of a witness is not in accordance with that rule, but the order in which evidence is introduced is generally regarded as in the discretion of the court. In that view the admission of the paper at the time it was read was not error for which the judgment could be reversed."

In *Illinois Central R. Co.* v. *Wade* (1903), 206 Ill. 523, 69 N. E. 565, the court, after stating the rule concerning the foundation to be laid to introduce oral statements, said: "But where the supposed contradictory statements were reduced to writing by the witness, or signed by him, a sufficient foundation for the introduction of the writing is laid by showing the paper to the witness, allowing him to inspect it and to read it if he desires, and proving by him, or others, that the signature thereto is his genuine signature. . . . Having laid the foundation for the introduction of the writings as impeaching testimony, the proper practice (as was the course pursued by counsel for the appellant company in the present case) was to offer the writings in evidence with

the other testimony in the same behalf." And continuing on page 533 (69 N. E. 568), the court said: "If some of the statements in the writings, or either of them, were deemed inadmissible for any reason, the objectionable statements should have been pointed out, and their exclusion asked."

In *Chicago, etc., R. Co.* v. *Cross* (1905), 214 Ill. 602, 73 N. E. 865, 105 A. S. R. 135, the trial court refused to admit in evidence a written statement which a witness on cross-examination admitted was written from information furnished by him, and that it had been read to, and signed by him. The part of the statement which contradicted the testimony of the witness having been read to the witness in the presence of the jury and the person who wrote the statement having testified that the witness made the statement, the court held it was not reversible error to exclude the written statement.

In *Chicago, etc., R. Co.* v. *Artery* (1890), 137 U. S. 507, 11 S. Ct. 129, 34 L. Ed. 747, a witness for the plaintiff on cross-examination was shown a written statement which he admitted he had signed. Objections to questions as to the contents of the statement were sustained. The statement was later offered in evidence for the purpose of impeachment, and on objection was ruled out, the court stating that it deemed the proper method to be to produce the person to whom the alleged statement was made. The exclusion of this statement was held reversible error. In so holding the court said: "We think the circuit court erred in laying it down as a rule that a written statement, signed by a witness and admitted by him to have been so signed, cannot be used in cross-examining him as to material points testified to by him; and in announcing it as a further rule, that the only way to impeach a witness, by showing contradictory statements made by him, is to call as a witness the person to whom or in whose presence the alleged contra-

dictory statements were made. The foundation must be first laid for impeaching a witness, by calling his attention to the time, place, and circumstances of the contradictory statements, whether they were in writing or made orally; and the court, in the present case, excluded that from being done. The written statement having been presented to the witness, and he having admitted that what purported to be his signature to it was his signature, it was perfectly open to him to read it, and he could have been inquired of as to the circumstances under which it was taken down and signed, so as to advise the jury as to its authenticity and the credit to be given to it. The bill of exceptions does not show that the plaintiff's counsel asked the witness to read the statement, or asked the court to have it read to him, or that the witness did not read it, or did not have it read to him."

See also *Camp* v. *Smith* (1884), 98 Ind. 409; *Lowe* v. *Southern Ry. Co.* (1909), 85 S. C. 363, 67 S. E. 460, 137 A. S. R. 904; *Sullivan* v. *Jefferson, etc., R. Co.* (1895), 133 Mo. 1, 34 S. W. 566, 32 L. R. A. 167; *Anthony* v. *Jones* (1888), 39 Kan. 529, 18 Pac. 519; *Hendrickson* v. *Com.* (1901), 23 Ky. L. Rep. 1191, 64 S. W. 954; *Ecker* v. *McAllister* (1876), 45 Md. 290; *Gaffney* v. *People* (1872), 50 N. Y. 416.

The court also refused to permit appellant to read in evidence a written statement purporting to have been signed by appellee. The evidence is to the effect that this instrument was prepared a few days after appellee was injured and while he was confined to his bed; that it was read over to him and because of his condition he did not sign it himself; that his name was signed by another who assisted appellee in making his "mark." The evidence was sufficient to authorize the introduction of this instrument in evidence, and the court erred in refusing to allow it to be read to the jury.

This is true whether it be viewed as the admission of a party or whether it be considered as a matter of impeachment.

Appellant is a physician and immediately after the accident administered first aid to appellee, after which he called an ambulance and took him to the hospital. After appellee was taken to the hospital it was agreed that appellant as a physician should take charge of appellee and treat him for his injuries, and he did so treat him. On the trial appellee called appellant as a witness and interrogated him as to the character and extent of appellee's injuries and as to the treatment given appellee. Later when appellant was testifying as a witness in his own behalf he said he had a conversation with appellee at the hospital the next day after the accident. He was asked to tell what was said at that time. It having been shown that at that time appellant was appellee's physician, and as such was treating him for his injuries, appellee objected to the question for the reason that the statement made by appellee at that time was confidential. Appellant offered to prove that while at the hospital the next day after the accident he asked appellee "Why did you turn suddenly in front of my car?" and that in response to that question appellee said, "I was looking the other way, and had turned to my left, and did not see your car until it was upon me." This statement did not relate to any treatment of appellee, was not privileged, and the court erred in not allowing appellant to testify as to what appellee said in response to the question asked him.

As was said by the Supreme Court in *Myers* v. *State* (1922), 192 Ind. 592, 599, 137 N. E. 547, 549: "At common law, communications between physician and patient, while the physician was in attendance upon his patient, were not privileged. . . . However, by statute (§520, Burns 1914 [§497, R. S. 1881]), 'physicians,

as to matters communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases,' are privileged, except by consent of the patient. This statute, being in derogation of the common law, under all rules of statutory construction, should not be enlarged by intendment to include as privileged information entirely set aside from that 'necessary to communicate to enable the physician or surgeon to act or prescribe.' Underhill, Criminal Evidence (2 Ed.) §179. Nor does it assume to do so merely because the relation of physician and patient exists." And after citing a number of decisions, the court, at page 600, said: "According to the decisions last cited, the words 'matters communicated,' as used in the statute to cover privileged information, may be defined as information obtained in the sickroom, heard or observed by the physician, or of which he is otherwise informed pertaining to the patient and upon which he is persuaded to do some act or give some direction or advice in the discharge of his professional obligation." See also *Minnis* v. *Steel* (1922), 79 Ind. App. 45, 132 N. E. 702; *Bower* v. *Bower* (1895), 142 Ind. 194, 41 N. E. 523.

The conversation proposed to be proven did not relate to appellee's condition, and was not such as to render appellant an incompetent witness concerning the same. The objection to the introduction of this evidence should have been overruled.

Complaint is also made of the refusal of the court to submit certain interrogatories to the jury, to be answered by them in the event they rendered a general verdict. The first of these interrogatories is as follows: "Were the plaintiff's injuries partly caused by any failure on his part to use care as an ordinary prudent person would have used under all of the circumstances as they existed at the time of and prior to the collision in question?" The others, in substance, asked

whether appellee's injuries were caused in part by any fault or want of care on his part which proximately contributed to his injuries. Each of the interrogatories asked the jury for conclusions resting on mingled questions of law and fact. The questions were not proper and the court did not err in refusing to submit them to the jury. *Louisville, etc., R. Co.* v. *Pedigo* (1886), 108 Ind. 481, 8 N. E. 627; *Cleveland, etc., R. Co.* v. *Asbury* (1889), 120 Ind. 289, 22 N. E. 140; *Town of Albion* v. *Hetrick* (1883), 90 Ind. 545; *Chicago, etc., R. Co.* v. *Wilfong* (1910), 173 Ind. 308, 90 N. E. 307; *Fire Assn., etc.* v. *Yeagley* (1905), 34 Ind. App. 387, 72 N. E. 1035; *Pennsylvania Co.* v. *Reesor* (1915), 60 Ind. App. 636, 108 N. E. 983; *Board of Comrs.* v. *Bonebrake* (1896), 146 Ind. 311, 45 N. E. 470.

Complaint is made of the giving and the refusal to give certain instructions, but we find no reversible error in this regard. Other questions are discussed by appellant but they are not likely to arise on a retrial and need not be decided on this appeal.

Judgment reversed, with directions to sustain the motion for a new trial and for further proceedings.

Dausman, J., not participating.