By the Court, Morgan, J.
The adultery was alleged to have been committed at Memphis, in Onondaga County. While the defendant and the alleged paramour, Clarke, were boarding at the same house, and were upon admitted friendly terms with each other, the defendant left for Utica on a visit to her friends, and immediately after, Clarke, her alleged paramour, addressed her a letter, which was intercepted by her husband before it reached its destination. TMs letter was offered in evidence, not only as a confession that he was living in adulterous intercourse with the defendant, but as contradicting his testimony ; he having denied the adultery.
It should also be observed that on Ms direct examination he admitted that he was in the habit of spending a good deal of Ms time in the society of the defendant, visiting her in her room, going to meetings with her, and occasionally accompanying her to Syracuse and back again. During most of this time, her husband was absent from the county. Clarke, however, testified that he at no time had criminal intercourse with her. On his cross-examination, he stated that he thought much of the defendant, and perhaps lie was in love with her; but he did 'not know as it was reciprocated by her. He was then shown the letter, and admitted that he wrote it. At this point the letter was offered in evidence. The defendant objected, upon the ground that it never reached her. The plaintiff claimed that it was competent to show the extent of his affections for the defendant, and also to contradict his declaration, that he had no criminal intercourse with her. The judge reserved this question until the evidence was closed, when this offer was renewed and the objection sustained.
*275 I am clearly of opinion that the letter was incompetent to prove, either the fact of adultery or the state of the witness’ feelings toward the defendant. If it had contained a direct admission of the adultery, it could not be evidence against the defendant.
Nor was it evidence of any other fact which tended in any manner to prove the adultery, as the alleged paramour could not, in the absence of the defendant, and without her knowledge, make declarations which could be used as evidence against her. It could no more be proved by his admission in a letter that never reached her, than by his declaration to a third person; and it is too clear to admit of question, that his declarations to other parties could not be shown to prove the state of Ms feelings towards either of the parties, if proof of such a fact was relevant to the issue to be tried. In Lovedon v. Lovedon, (2 Hagg. [Cons. R.] 51,) it was ruled that the letters of the wife to her paramour, not received by him, were not evidence against him, although they might be against her. For the same reason, the letter of her alleged paramour, not received by her, cannot be used as evidence against her, whether the letter confesses the adultery, or discloses a state of mind tending to prove it.
But the more important question is, whether the letter was admissible as evidence to contradict the witness.
It is hardly claimed by the plaintiff’s counsel that it contained an admission of the writer’s having committed an act of adultery with the defendant. The most that can be said is, that it was not such a letter as a prudent man would write to a married woman, unless their former intercourse had been quite familiar and to the very verge of guilty intercourse, although not irreconcilable with her innocence. If he confessed on the trial of the action that he loved her, this letter furnishes additional proof that he was fascinated with her.
He calls her his own “precious one”—Ms “darling”— *276 expresses the most passionate love for her, and declares that he would sooner see her “dead, than love another as she had professed” to love him. This may be called the very madness of passion; and if the letter had reached her, and she had accepted and answered it without remonstrance, it would have furnished very strong evidence of improper familiarity between them, and may have changed the result of the trial altogether. But proof of improper familiarities, is not to be made out from his declarations in her absence, as we have already seen; and before the letter is admissible, it must appear that the admissions or declarations of love therein contained, are contradictory to his evidence on the stand, or in substantial conflict with it.
It would be very unjust towards this married woman to read in evidence the passionate declarations of this young man, without first showing that she is responsi-' ble for them. The letter contains matters that might prejudice her, without in the least contradicting anything said by the witness on the stand. It contains a statement that she had made prof essions of love to him ; and certainly this part of the letter could in no way be used to contradict anything'he had sworn to. The offer was to read the whole letter in evidence; not those parts which it was claimed contradicted the witness. Nor was the attention of the witness or court called to the particular expressions in the letter which it was claimed were in conflict with his evidence. .It is submitted, therefore, that according to the decisions in this State, the letter cannot be used as evidence to impeach the witness. It was not sufficient that the witness was in court and could be called upon to explain the alleged contradictions. (Sprague v. Cadwell, 12 Barb.,, 516.) But his attention must be called to these, in order to lay the foundation for .the evidence. (Hubbard v. Briggs, 31 N. Y. 537, Wright, J.) And this is equally necessary when the contradicting evidence is in writing, or *277 when it is oral. (Stephens v. The People, 19 N. Y., 549.) In the case of Stephens v. The People, (supra,) the court held that when it was designed to contradict a witness by showing that the deposition made by him before the coroner was different from his evidence on the trial, the contradictory parts of the deposition must be read to him, in order to give him an opportunity for explanation. In Morris v. Myers, (11 Iowa, 538,) in a case very much like this, a letter was shown to the witness, on his cross-examination, and he admitted the handwriting, but did not read it, nor was his attention called to the alleged conflict between it and his evidence. The plaintiff then offered the letter in evidence to impeach the credibility of the witness; and it was held that the letter was inadmissible, as the proper foundation had not been laid, by calling the attention of the witness to the alleged conflict between the contents of the letter and his evidence, in such a manner as to give him an opportunity to explain. But in my opinion, there are other grounds for rejecting the letter. The rule allowing such contradictions, is stated in Baptist Church v. Brooklyn Fire Ins. Co., (28 N. Y. 160.) “If,” says Judge Denio, “a witness testify to the existence of a material fact within the issue, the opposite party may show that he had, out of court, made a contradictory statement as to that fact, with a view to affect his credit.” (See 3 Kern. 160.) This rule, by its terms, would exclude statements made out of court, which are not contradictory.
Thus, in Shaw v. Emery, (42 Maine, 59,) it was held not to apply to evidence which only showed the improbability of a transaction, as stated by the witness, but having no tendency to show that he had given a different account of it.
The alleged contradictory evidence in the case at bar, related to the state of the witness’ feelings and affections towards the defendant. The difference, however, is only *278 in degree. The language of the letter describes greater heat of passion, perhaps, than the writer was willing to confess to on the trial; but there is no admission that he had been guilty of criminal intercourse with the defendant. The state of his affections towards her was a proper subject of inquiry, so far as they were reciprocated, and tended to prove the adultery. But there is, perhaps, no conflict between the language oí the letter in this respect, and the admissions made by the writer in his oral testimony. A difference in degree hardly furnishes grounds for alleging that the witness has contradicted himself.
[Onondaga General Term,
June 29, 1869.
Bacon, Foster, Mullin and Morgan, Justices.]
But if it is concluded that portions of the letter may have been properly used, in connection with the oral testimony of the writer, to discredit the witness—as to which I have considerable doubt—still there is no ground upon which it can be claimed that the letter, as a whole, could be received either to prove the adultery or to contradict the witness. The letter purports to declare what is the state of the defendant’s affections towards the witness, and yet it never came to her knowledge. This portion of the letter surely could not be used against the defendant under pretence of contradicting the witness.
If there are portions of the letter which could be properly used as impeaching evidence, such portions only could have been offered in evidence, after the proper foundation was laid, by calling the witness’ attention to them. In my opinion, the order should be affirmed, and a new trial denied.
New trial denied.