ELLEN HANLON, Appellant, *v.* SAMUEL W. EHRICH et al., Respondents.

1. WITNESS — WHEN HE MAY BE CONTRADICTED OR DISCREDITED BY PREVIOUS WRITTEN OR ORAL STATEMENTS. Letters, affidavits, written statements, verified pleadings, depositions and previous testimony of a witness are admissible to impeach him, if they are material to the issue upon which he is testifying and if they tend to contradict or discredit him, and when such contradictory matter. is in writing, and can be produced, the whole of the writing should be offered in evidence before it is allowed to be read.

2. SAME — STATEMENT OF RULE FOR ADMISSION OF SUCH WRITINGS, OR PARTS THEREOF, WHEN THEY CONTAIN IMMATERIAL AND INCOMPETENT MATTER. Where, however, such writing contains much irrelevant or incompetent matter in addition to the parts that are material, competent and contradictory of the.witness, only the material and competent parts should be received and read in evidence; in no event, however, should the writing, or any part thereof, be read until it has been marked in evidence; and if the writing contains irrelevant or incompetent matter that cannot be safely submitted to a jury, it should be marked for identification and the competent parts thereof read into the minutes so as to form part of the record.

3. SAME — ERRONEOUS EXCLUSION OF CONTRADCTORY STATEMENTS MADE BY WITNESSES FOR PLAINTIFF IN ACTION TO RECOVER DAMAGES FOR ALLEGED INJURIES. Where witnesses for the plaintiff, in an action brought to recover for injuries alleged to have been caused by the negligence of the defendants, had, at the instance of the defendants, prior to the trial and in anticipation thereof, signed written statements containing matter relating to plaintiff's alleged injuries and clearly contradictory of the testimony given at the trial by such witnesses, it may fairly be presumed that the statements were made for use at the trial and that they were germane to the issue; and where the witnesses had, upon cross-examination by defendants, identified and admitted their signatures to the statements, it is reversible error to exclude the statements from evidence when offered by defendants as part of their case for the purpose of impeaching such witnesses, where the objection thereto was merely general, as immaterial, irrelevant and incompetent, and not upon the specific ground that parts thereof were incompetent for the purpose for which they were offered, especially where the trial court, after excluding the statements, criticised and discussed the execution and contents thereof as if they had been admitted in evidence and were before the jury.

*Hanlon* v. *Ehrich*, 80 App. Div. 359, affirmed.

(Argued May 18, 1904; decided May 31, 1904.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 6, 1903, which reversed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John F. Carew* and *Thomas F. Magner* for appellant. The ruling of the trial court on the admission of evidence was

correct. (*Romertze* v. *E. R. Nat. Bank*, 49 N. Y. 577; *Hobby* v. *Hobby*, 64 Barb. 277; *Honstine* v. *O'Donnell*, 5 Hun, 472; *Hines* v. *Cushing*, 53 Hun, 519; *S. & L. P. R. R. Co.* v. *Arnold*, 41 App. Div. 482; *Sturne* v. *Williams*, 6 J. & S. 325; *Gaffney* v. *People*, 54 N. Y. 416; *Stephens* v. *People*, 19 N. Y. 549; *Starin* v. *People*, 45 N. Y. 340; *People* v. *Beach*, 87 N. Y. 509.)

*H. Snowden Marshall* for respondents. The exclusion of the three papers was error, not cured by the subsequent qualification, permitting counsel to read "Any portion that he called the attention of the witness to, or that is in conflict with her testimony here." (*Romertze* v. *E. R. Nat. Bank*, 49 N. Y. 577; *People* v. *Tyler*, 43 Hun, 419; *Gaffney* v. *People*, 50 N. Y. 416; *Doud* v. *Donnelly*, 35 N. Y. S. R. 834; *Plyer* v. *G. A. Ins. Co.*, 15 N. Y. S. R. 865; Abbott's Select Cases on Ev. 729; Chase's Stephen's Ev. 332, art. 132; Starkie on Ev. [10th ed.] 239; Greenl. on Ev. [15th ed.] § 462.) The statements, and each and every portion of the statements, were competent, relevant and material testimony upon the issues made by the plaintiff that the statements had been improperly obtained from the witnesses. (*Lacs* v. *Everard's Breweries*, 170 N. Y. 444; *Nowack* v. *Met. St. Ry. Co.*, 166 N. Y. 433.) If there was irrelevant matter, or matter prejudicial to the plaintiff in the affidavits, the burden was upon the plaintiff to point out such matters and object to them. (*Gaffney* v. *People*, 50 N. Y. 416; *S. & L. P. R. R. Co.* v. *Arnold*, 41 App. Div. 482.)

WERNER, J. The merits of this case seem to have been somewhat obscured in the mutual efforts of counsel to reduce to scientific accuracy a question of practice which has long been settled by the theories of text writers, but which the courts in their practical procedure have had to apply with more or less of elasticity to an infinite variety of facts.

That question, broadly stated, is whether, in the effort to contradict a witness for the adverse party by the contents of a

writing which is shown to have been made, subscribed or sworn to by him, the paper may be introduced and read in evidence as a whole, or whether counsel who thus undertakes to discredit a witness must be confined to reading such parts of the instrument as are clearly contradictory of his oral testimony. The mere statement of the question suggests the obvious impracticability of formulating any hard and fast rule that will fit every case alike, and always serve the ends of justice. There are cases in which the character of the writing and the purpose for which it was made render it impossible to make effective or intelligent use thereof unless it is laid before court or jury in its entirety. There are other cases where a voluminous writing, although made, signed or sworn to by the witness, may contain but a few fragmentary sentences that are contradictory of his oral testimony. To apply the same rigid rule to both classes of cases would be a hindrance rather than a help to the administration of justice.

In the light of these preliminary observations, a brief statement of the precise manner in which the question arises in the case at bar will point the way for further discussion. The action was brought to recover damages for injuries alleged to have been sustained by the plaintiff in consequence of the alleged negligence of the defendants. Prior to the trial of the action, three persons who were called as witnesses for the plaintiff, had signed written statements at the instance of the defendants' investigator. Upon the trial, after having given direct testimony for the plaintiff, these witnesses were confronted with their signed statements, and admitted the signatures. These statements were made in anticipation of the trial and concededly contained matter that was clearly contradictory of the testimony given at the trial by the signers thereof. After the first of these witnesses, a woman named Flaherty, had given her direct testimony, defendants' counsel attempted to interrogate her about her signed statement. She claimed that it was only partly true and specified certain particulars in which it was not correct. Counsel for the defendants thereupon undertook to read from the paper with-

out having offered it in evidence.   He was interrupted
by the court with the observation : " You do not want to
read the whole paper ; read what you claim is in conflict
with what she said here."   Defendants' counsel responded
in the affirmative and continued to read as follows : " I
noticed another saleslady named Nellie, or Ellen, Hanlon
near the second case, was standing about ten feet from her
when I noticed the door of this case fall out of the groove or
floor of the stock case and strike the floor and stand there
without in any way falling over against or upon Nellie Han-
lon, upon the floor, and as it struck the floor she walked away
as unconcernedly as could be, not limping or walking as if she
had received any injury ; and I know it did not touch her in
any way.   I noticed her every day for about a month after
this door falling on the floor."   At this juncture the court
again interposed with the cautionary remark : " Only such
portions as are in conflict with her testimony here."   Defend-
ants' counsel then again resumed his cross-examination of the
witness who, a little later, admitted that she had said in her
statement, " Several months after I missed Miss Hanlon from
the store, her sister Annie and another, who, I think, was her
sister, asked me to tell them the door to the fur case that fell
on Nellie Hanlon, which I refused to do."   At the close of
the examination of this witness the written statement was
marked for identification.   Another of plaintiff's witnesses,
named Sweeney, identified her signature to a written statement,
and after she had explained the circumstances under which it
was signed, it was marked for identification.   A third wit-
ness for the plaintiff, named McLaurie, was shown a writ-
ten statement, and she admitted the signature to be her
own, but denied that the statement was true.   This last paper
does not appear to have been marked for identification.   This
was the condition of the record when plaintiff's counsel rested
his case.   The motion of defendants' counsel for a nonsuit
being denied, he proceeded to offer in evidence the three writ-
ten statements above referred to.   They were objected to as
irrelevant, immaterial and incompetent, the objections were

sustained and defendants excepted. The plaintiff obtained a verdict and from the judgment thereafter entered the defendants appealed to the Appellate Division, where the judgment was reversed and a new trial granted, on the ground that the trial court erred in not receiving in evidence the written statements alluded to. From the last-mentioned order the plaintiff has appealed to this court.

Counsel for the respective parties seem to have been almost equally diligent in tempting fate, by staking the whole issue upon the exposition of a purely incidental question of practice. Defendants' counsel in the first instance declined the concessions of the trial court which, with a reasonable degree of perseverance and tact, could probably have been extended so as to secure all that was really material in the written statements. The Appellate Division held that defendants' counsel was technically correct in insisting upon his right to introduce the papers as part of his case. Then plaintiff's counsel, not to be outdone, declined the new trial granted, throwing a $7,000.00 verdict into the balance, and stipulating that if his view of this question of practice is incorrect, judgment absolute shall go against his client. Under these circumstances we can do no less, and shall attempt to do no more, than to " hew to the line " if we can find it, and let " the chips fall where they may."

As we have intimated, the theory of the rule under discussion is comparatively simple and well settled ; but its practical application has resulted in some difficulty and confusion. The principle upon which the rule is founded is obvious. As a witness may be contradicted by other witnesses, so he may be discredited by his own contradictory oral or written statements. One of the most frequent methods of impeaching a witness is by proving his prior oral statements in conflict with his testimony. The practice in this regard is necessarily simple and uniform. The first step in the process is to lay the foundation for such proof by asking the witness the specific question whether he ever made the statement which the examining counsel proposes to use against him. If the wit-

ness, without explanation or qualification, admits having made the statement, that is the end of the inquiry, because the witness has discredited himself and there is no need for contradiction. If, on the other hand, the witness denies having made the statement, or does not remember having made it, he may then be contradicted by any person who heard him make it. Such evidence of oral statements is usually direct and specific, or at least easily separable from statements not germane to the purpose of contradiction, and this is equally true of any denial, explanation or qualification which a witness thus discredited may thereafter desire to make. The rule as to documentary evidence, which is to be used to contradict the oral testimony of a witness, is necessarily somewhat different and has given rise to much discussion. Letters, affidavits, written statements, verified pleadings, depositions and previous testimony of a witness are admissible to impeach him, if they are material to the issue upon which he is testifying and if they tend to contradict or discredit him. When such a writing contains nothing except what is clearly contradictory of material testimony given by the witness, it would seem to fall within the general rule that a writing is not only the best evidence of what it contains, but the only evidence that is legally admissible of its contents, provided always that it is in existence and can be produced. In such a case the whole of the writing should be offered in evidence before it is allowed to be read. There are, however, many instances in which the writing may contain much irrelevant and even incompetent matter, in addition to some parts that are material, competent and contradictory of the witness. In such a case the proper rule would seem to be that only the material and competent parts should be received and read in evidence. In no event, however, should the writing, or any part thereof, be read until it has been marked in evidence. If the writing contains irrelevant or incompetent matter that cannot safely be submitted to a jury, it should be marked for identification and the competent parts thereof read into the minutes so as to form

part of the record. As a matter of strict practice the proper time to do this is when the counsel who desires to use the evidence has the case, but the courts may in their discretion properly permit it as a part of the cross-examination. This last-mentioned feature of practice has apparently played some part in producing the impression that it is proper to interrogate a witness as to the contents of such a paper without introducing it in evidence either as a whole or in part, and this in turn is probably responsible for some of the apparent diversity in the decisions. That diversity is more apparent than real, however, for it is to be remembered that appellate tribunals have to deal with concrete questions presented by the records as made and not with abstract theories based upon technically correct rules.

Since the question is purely one of practice we shall not attempt to reconcile the decisions in other jurisdictions with those of our own state. Suffice it to say that some of them, while in substantial accord as to the general rule, seek to differentiate each special case by reason of particular facts. The case of *Romertze* v. *East River National Bank* (49 N. Y. 577) is referred to by all the modern text writers as a leading authority upon the subject. In that case the general rule is stated as follows : " When a party proposes to impeach a witness by proving inconsistent written statements, it is sufficient to show the witness, or read to him, the paper, and, if its genuineness is admitted, the party can introduce it when he has the case and the right to put in evidence ; and it is not the legal right of the other party or the witness to enter into any explanation of the contents of the paper until after it has been introduced in evidence. It is within the discretion of the court, however, to vary the order of proof." The contradictory evidence under discussion in that case was embodied in the deposition, taken *de bene esse*, of a witness who was sworn for the defendant at the trial. On his cross-examination the deposition was shown to him and he admitted his signature thereto. After the defendant had rested his case, plaintiff's counsel proposed to read the deposition "for the purpose of showing that

31

he (the witness) made statements therein, inconsistent with his testimony given on the stand in court on this trial." The deposition was excluded by the trial court on the ground, as stated by this court, "that a proper foundation had not been laid for the purpose of reading the deposition to contradict the witness," and its exclusion was held to be error, although the writing was not printed in the record on appeal, and there was nothing before this court to indicate the precise character of its contents. Counsel for the appellant urges that the real point decided in the *Romertze* case was that a writing containing matter which contradicts the evidence of a witness given upon a trial, is not inadmissible because there was no such foundation laid for its use as is required by the rule relating to oral statements sought to be used for purposes of contradiction. That is true. But the character of the question was such as to necessitate a general discussion of the rule governing the admissibility of writings for the purpose of contradicting witnesses, and, as the case has been almost universally recognized as an authority upon the rule itself, we are not now disposed to give it such a narrow construction as to destroy the effect of its eminently sound and practical reasoning. It is cited in Greenleaf on Evidence (Vol. 1, p. 616, 15th ed.); Rapalje's Law of Witnesses (Sec. 206); Abbott's Select Cases (P. 729), and Chase's Stephen's Digest of the Law of Evidence (Art. 132), where the rule is laid down substantially as above stated.

In *Gaffney* v. *People* (50 N. Y. 422) a witness for the defense was sought to be discredited by a written statement previously made by him. It was introduced in evidence on behalf of the prosecution after the defense had rested, and its admission was held to be no error, this court holding that the general objection of incompetency was properly overruled, and that if any part of the statement was objectionable as not relating to inquiries which had been made of the witness, that objection should have been specifically taken.

The cases relied upon by appellant's counsel do not hold that it is improper *per se* to receive in evidence a writing

designed to contradict a witness; on the contrary, they stand upon the rule that the introduction of the paper is proper, but only to the extent that it really serves the purpose for which it is offered. In *Hobby* v. *Hobby* (64 Barb. 277), which was an action for divorce, the co-respondent was a witness for the defendant. On his cross-examination he was shown a letter, the writing of which he admitted, addressed to the defendant, but intercepted by the plaintiff, so that it never reached the person for whom it was intended. The letter contained some contradictions of the testimony of the writer, but it was more largely composed of other matters which were clearly irrelevant and incompetent, since they served to subject the defendant to the suspicion of a meretricious alliance with the author of the letter, founded upon his declarations made without her knowledge. The offer to read the whole of the letter was held to have been properly excluded.

Another case that illustrates this phase of the rule under discussion is *Saranac & Lake Placid R. R. Co.* v. *Arnold* (41 App. Div. 482) where plaintiff's counsel sought to introduce in evidence the annual report of the board of railroad commissioners, for the purpose of contradicting a witness for the defendant. It was a document covering twenty-seven pages of printed matter and from its very nature was largely, if not wholly, irrelevant to any material fact testified to by the witness sought to be contradicted. The court expressed its willingness to receive such specific parts of the report as counsel offering it could show to be competent for purposes of contradiction, and upon his failure to do so the whole document was excluded. This ruling was held to have been proper. Other cases to the same effect are cited, but those referred to are sufficient for purposes of illustration.

Having stated the general rule upon this question, and the trend of authority in this state applying it, we have now to decide which of the two views contended for upon the facts of this case is the correct one. Starting out with the conceded fact that the statements offered in evidence were made

expressly with reference to the personal injuries upon which the plaintiff's cause of action is based, it may fairly be presumed that they were made for use at the trial and were germane to the issue to be tried. That they all contained statements contradictory, in part at least, of the testimony of the witnesses who signed them is shown by the extracts read from the statement of the witness Flaherty. The objection to their reception in evidence was general and not on the specific ground that parts thereof were incompetent for the purpose for which they were offered. As the statements are not in the record we can only judge of their contents by the portions that were permitted to be read. These extracts indicate that the papers were generally contradictory of material facts which had been testified to by the witnesses who signed the statements. In that view of the case we think it was clearly erroneous to exclude them altogether upon a general objection to their competency. Assuming for the purposes of this discussion, however, that the statements may have contained some matter that was not contradictory of the oral testimony of the witnesses who signed them, it was improper to rule them out entirely. It is claimed for the appellant that they were not so excluded but we think that was the necessary effect of the court's final ruling. No part of the statements of the witnesses Sweeney and McLaurie was read. While, as we have said, the counsel for the defendants might have obtained from the court such further concessions in addition to those granted him, that he could have placed before the jury the material parts of these statements, yet the fact remains that it was technically correct practice to offer them in evidence when the defendants took up their side of the case. Had there been a specific objection to such parts thereof as were not strictly contradictory of the oral testimony of the witnesses who signed them, a moment's inspection would have enabled the court to decide to what extent they were admissible. This was not done, but under a general objection they were erroneously ruled out altogether.

Thus far the discussion of this question has proceeded with-

out reference to its connection with other phases of the trial. Although the statements referred to were excluded as above stated, the court, in submitting the case to the jury, dwelt at considerable length upon the circumstances and the manner in which they were signed, and practically left it to the jury to decide whether the indorsements upon the statements, "I have read this and it is true," which were written above the signatures, were of such a character as to confirm or impeach the instruments. That portion of the charge was specifically excepted to by defendant's counsel. This charge might have been proper enough if the statements had been received in evidence and the question had then arisen whether they correctly set forth what the signers thereof had stated to the draftsman; but upon the record as it stands the error in excluding the statements is emphasized by a charge in which they are criticised and discussed as though they were before the jury, when in fact they had been ruled out.

We think the order of the Appellate Division should be affirmed, and that the defendants should have judgment absolute upon plaintiff's stipulation to that effect, with costs.

Parker, Ch. J., Gray and Martin, JJ., concur; O'Brien and Cullen, JJ., dissent; Haight, J., absent.

Order affirmed, etc.