WITNESSES (§ 380*)—CONTRADICTION—INCONSISTENT STATEMENTS OF OWN WITNESS.

> In an action against a street car company for personal injuries, where an ex-motorman, called as a witness by the defendant, proved to be hostile to it, it was error to admit in evidence a written report and statement which he admitted that he signed the night of the accident, and which contradicted his testimony, since a party can show inconsistent statements of his own witness only to refresh his recollection or to draw out a correction of details, and not for the purpose of impeaching him.

> [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1210–1219; Dec. Dig. § 380.*]

Appeal from Trial Term, Kings County.

Action by William J. McGrath Power against the Brooklyn Heights Railroad Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLETON, and PUTNAM, JJ.

Adolph Feldblum, of Brooklyn, for appellant.
D. A. Marsh, of Brooklyn, for respondent.

PER CURIAM. The appellant assigns but one ground of error; that the court erroneously admitted the report and a sworn statement of the witness Mollahan, an ex-motorman of a car following the one concerned in the accident, who had been called for the defendant. The witness had manifested hostility to the extent that the counsel who called him was allowed to subject him to cross-examination. When Mollahan disclosed this animus against his former

employer, he was asked if on the same night of the accident he had made a report to the defendant. He admitted that he had, although later he said he had not written the report himself, but that it had been signed by him when already prepared. The court asked whether in this report he had stated that the conductor had shoved plaintiff off the car—the substance of· what the witness had just testified. He admitted that he had not so stated in this report. After some further questions, the report was shown and identified by the witness. Asked if this report was the truth, he answered, "No; that is not the truth." The report was then offered and received in evidence over the plaintiff's objection and exception. In explanation the witness further said: "I did make a false statement to hold my job." Like rulings followed by exceptions were made in respect to a statement which the witness had signed and sworn to.

This appeal raises the question: How far can such contradictory statements tending to discredit the witness be offered upon direct examination? Where the witness called by the opposite side is being cross-examined, the practice as to the use of such contradictory and impeaching writings is set forth in Hanlon v. Ehrich, 86 App. Div. 441, 83 N. Y. Supp. 687; 178 N. Y. 474, 480, 71 N. E. 12, 14. "In no event, however," wrote Werner, J., "should the writing, or any part thereof, be read until it has been marked in evidence." That procedure is because the evidence is offered to impeach, not to refresh or to correct the memory. This to bring out the full effect of the contradiction. As Church, C. J., said:

"It was not competent to repeat particular sentences and ask if he testified to them, because the paper was the best evidence of what it contained. It was not incumbent upon the plaintiff's counsel to ask for explanations, nor to introduce the paper in evidence at that time." Romertze v. East River National Bank, 49 N. Y. 577.

Here the question is as to the right, not only to contradict one's own witness, but, by introducing in full such statements, to discredit and in that way to impeach the witness who has disappointed or surprised the counsel who put him on the stand. In New York it is reversible error to confront and discredit one's own witness by the introduction of prior contradictory written statements. The general rule is reaffirmed by Cullen, C. J., where he admits the exception when the witness is an adverse party, whose admissions as a party have always an independent substantive value. Koester v. Rochester Candy Works, 194 N. Y. 92, 97, 87 N. E. 77, 19 L. R. A. (N. S.) 783, 16 Ann. Cas. 589.

The New York authorities are to the effect that a party calling a witness cannot attack his credibility by general evidence of character (People v. Safford, 5 Denio, 112, 118; Thompson v. Blanchard, 4 N. Y. 303), or prove by other witnesses self-contradictory statements (Nichols v. White, 85 N. Y. 531, 535; O'Doherty v. Postal Telegraph Cable Co., 113 App. Div. 636, 99 N. Y. Supp. 351), or show prior inconsistent statements in order to discredit him (Berkowsky v. New York City Ry. Co., 127 App. Div. 544, 111 N. Y. Supp. 989; Bernstein v. Empire Bridge Co., 146 App. Div. 529, 131 N. Y.

Supp. 129, affirmed 205 N. Y. 603, 98 N. E. 1098), though he may recall to his witness' attention statements he has previously made so as to draw out details of fact, or explain any apparent inconsistency (Bullard v. Pearsall, 53 N. Y. 230; Maloney v. Martin, 81 App. Div. 432, 80 N. Y. Supp. 763; 178 N. Y. 552, 70 N. E. 1102); and sometimes to show how counsel came to call the witness so as to account for the surprise or to show any deceit practiced (Bullard v. Pearsall, 53 N. Y. 230, 231; Coulter v. American Merchants' U. E. Co., 56 N. Y. 585).

In the trial below, the witness readily recalled and admitted making and verifying these statements. He declared and persisted in the assertion that they were untrue. There was no attempt by counsel to take up different details, and thereby seek to induce the witness to correct some error in his testimony in court, as was done in Maloney v. Martin, supra, where upon objection the affidavit which had been read from was excluded. Mollahan's report and statement came in extenso upon his admission of his signatures thereto. This, as we have seen, was the correct course to impeach him, to nullify his testimony, and to destroy his credibility. It was not the allowable method in this state to treat one's own witness, however disappointing he might prove. The ancient principle that his general credibility has been vouched for requires that he be still treated as generally truthful and worthy of belief. To introduce such written statements so obtained was not the method to probe his recollection or to draw out a correction of some details he had testified to, which is as far as such self-contradictory statements may be resorted to. The distinction is substantial. It is not only that the counsel should not be able to destroy the evidence of one whom he puts on the stand, but because of the effect of receiving such contradictory statements. Here by the method pursued defendant was enabled to introduce these hearsay statements, thus obtained from his witness, and to lay them before the jury without distinguishing between them and the substantive proofs in the cause. Naturally, as nearly contemporaneous, they would have an important effect. This liability of a jury to take such self-contradictory statements as original evidence is the "principle which so much affects courts in reaching the rule forbidding impeachment of one's own witness by self-contradiction." 5 Wigmore, Supplement, p. 92.

In Massachusetts, where a statute allows a party producing a witness to contradict him by other evidence, and to prove that he has made at other times statements inconsistent with his testimony at the trial, it is rigidly held that such contradiction must not be taken as affirmative evidence of what took place, as it is received only to discredit or contradict, and not as independent testimony. McDonald v. N. Y. Central, etc., R. R. Co., 186 Mass. 474, 72 N. E. 55; Manning v. Carberry, 172 Mass. 432, 52 N. E. 521. Inasmuch as the report and statement were received in like manner as if defendant had not called the witness, and as would only be allowable if he had been produced by the plaintiff, the exceptions reserved to admitting these documents must be sustained.

For this error, the judgment and order denying new trial must be reversed, and a new trial granted, costs to abide the event.