JAMES LONGACRE, an Infant, by FREDERICK V. D. LONGACRE, His Guardian ad Litem, Respondent, *v.* YONKERS RAILROAD COMPANY, Appellant.

Second Department, May 14, 1920.

**Street railways — negligence — action by infant to recover for injuries received while in charge of nurse in jumping from moving car — duty of defendant to keep doors shut — charge that proof of negligence frees plaintiff from contributory negligence erroneous — verdict against weight of evidence — when testimony given at former trial admissible — preliminary proof — oral evidence as to existence of written rule of defendant — evidence as to injury not pleaded — counsel admonished for disorderly examination of witness and for constant interruption of opposing counsel when presenting requests to charge.**

In an action to recover for personal injuries received by the plaintiff, a young child, in jumping off a moving street car, it appeared that the plaintiff and his brother, in the care of a nurse, were riding on the defendant's car; that they were unruly and ran about the car and onto the front platform

and talked to the motorman; that the nurse, though she tried to control them, was unable to do so, and that as the car was about to stop the plaintiff's brother ran to the front of the car and jumped off and the plaintiff following him jumped onto his brother and rolled under the car receiving injuries necessitating the amputation of one leg.

*Held,* that it was error for the court to charge that it was the duty of the motorman and conductor on the car to close and lock the car doors so that the plaintiff could not run on the platform and jump from the car.

No one can be said to be guilty of negligence merely because he fails to make provision against an accident which he could not be reasonably expected to foresee, and the motorman was not bound to anticipate that the children would be permitted to come out on the platform behind him unattended and on reaching the platform would jump from the moving car.

It was error for the court to charge that if negligence were established on the part of the defendant's employees it would free the parents or the plaintiff's nurse of contributory negligence.

The verdict is against the weight of the evidence as to negligence on the part of the defendant and absence of contributory negligence on the part of the nurse.

The testimony of the nurse given at a former trial should not have been read, pursuant to section 830 of the Code of Civil Procedure, as there was no proof that the witness was at the time a non-resident of the State or that she was absent from the State, nor was any proof given of an effort made by the plaintiff to obtain her presence at the trial.

The preliminary proof, which merely established that at the time of the first trial, a month before, the witness was a resident of the State of Vermont, that she came to this State at the request of the father of the plaintiff to testify, and that after testifying she was supplied with money and declared her intention to return to Vermont, was not sufficient to authorize the reading of the testimony.

In order that testimony given at a former trial may be read on the ground that the witness is absent from the State it must be made to appear that the witness is actually absent from the State at the time the testimony is offered.

It was error for the court to admit evidence of a written rule of the company in reference to the closing of the car doors without requiring the proper foundation to be laid for the introduction of the oral testimony.

It was also error to admit testimony that the plaintiff suffered from mastoiditis and had been operated on, as there was no allegation of such facts in the complaint and it was not a condition naturally resulting from the specific injury set forth.

Counsel admonished for disorderly and acrimonious examination of a witness and for constant interruption and contradiction of the opposing counsel while the latter was presenting his requests to charge.

APPEAL by the defendant, Yonkers Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of Westchester on the 31st day of March, 1919, upon the verdict of a jury for $30,000, and also from an order entered in said clerk's office on the 7th day of March, 1919, denying defendant's motion for a new trial made upon the minutes in an action to recover for negligent injury.

*Alfred T. Davison* [*E. Crosby Kindleberger* and *Leverett F. Crumb* with him on the brief], for the appellant.

*Thomas J. O'Neill* [*L. F. Fish* and *F. Herbert Wadsworth* with him on the brief], for the respondent.

KELLY, J.:

The infant plaintiff, five and one-half years of age, with his brother, seven years of age, were passengers upon one of the defendant's street railroad cars on March 14, 1913. They were in charge of a nurse, a Polish girl speaking little English, who had been in the employ of plaintiff's family for about a year preceding the accident. She had much difficulty in controlling the two children, who ran about the car and out upon the platform. The conductor put them back inside the car, but they would not obey the nurse. She chased them about the car and caught them, but they broke away from her from time to time and went out on the front platform. There is evidence that the motorman talked to them or joked with them. The nurse recovered them and brought them back in the car. As the car approached the terminal and was within fifteen or twenty feet of the end of the line, slowing up for its final stop, the motorman putting on the brakes, the boys got away from the nurse again, the elder boy went out on the front platform and jumped off the car. The plaintiff, the younger of the two, followed his brother out on the platform and also jumped off the car, landing on his brother, which caused plaintiff to fall in such manner that his left leg went under the car wheel and was injured so that amputation was necessary between the ankle and the knee. The injuries alleged in the amended complaint are as follows: "V. Upon information and belief that by reason of the said carelessness and negligence of the defendant and its employees in the operation of its said car the said plaintiff on or about the said 14th day of March, 1913,

upon Park Avenue and between Douglass Avenue and Roberts Street was thrown or fell from said car and one of the wheels of said car so injured the lower part of his left leg that the same had to be amputated between the ankle and the knee; and that said plaintiff sustained other lacerations, abrasions and contusions of his body, together with severe shock to his nervous system and that he was confined to the hospital for a considerable length of time and was then and still is under the care of the doctor or surgeon, and said infant plaintiff still is and will forever be permanently maimed and injured."

The plaintiff charges negligence on the defendant's part because the vestibule side doors on the front platform were not closed at the time of the accident, and also because the doors leading from the body of the car to the front platform were open. Plaintiff insists that it was the duty of the motorman or conductor to close and latch these doors while carrying children and knowing that they were running up and down the car beyond the control of their nurse, and also in permitting the children to stand upon the front platform.

The learned trial justice charged the jury that while the defendant railroad company was not a guarantor or insurer of the safety of its passengers, it was bound to use a high degree of care. He submitted to them the question whether the motorman and conductor exercised the high degree of care that was required of them by reason of carrying the child as a passenger, and whether in view of the antics of the two children they should have closed the doors leading from the body of the car to the platform, as well as the vestibule doors on either side of the platforms. He said: " The defendant claims that they had no rule requiring the employees to close the doors and that, therefore, the employees were not guilty of negligence in failing to obey a rule of the company, but that whether or not they would keep the doors closed was a matter left to their discretion; and if you find that in their discretion, good judgment, reasonable care would require them to close the doors, I have to charge you that it was negligence on their part if they did not so close them as required by reasonable prudence. The defendant says that this car was being operated slowly and carefully and in good order, sound condition, over firm tracks, so that there would not be

Second Department, May, 1920. [Vol. 191.

much jar stopping at curves; that finding the plaintiff in the car in the care of his nurse that all reasonable prudence required of them, notwithstanding the high degree of care they had to exercise, was to leave the plaintiff and his brother to the care of the nurse, and that they were justified as reasonably prudent men in so doing, and in leaving the child to the care of the nurse why they are not guilty of any negligence, and of course that ends that, because you would simply render a verdict for the defendant. But the claim of the plaintiff is, that, notwithstanding the presence of the nurse, that the fact that the two boys were running about the car was apparent to the two employees and that they might run into a place of danger was indicated to those employees by the fact that they had gone out on the back platform, that they were running about to different parts of the car, and that they were too lively for the nurse to absolutely control their movements; that she did not have them on a string, and that she could not completely control them by her hand, and that she did all that a reasonably prudent and capable nurse would do in caring for the children, and notwithstanding that she could not control them with reasonable care that it was the duty of these two employees to close the doors so that they, if they did move about the car, could not get out on the front platform, because the door leading there might be latched, or if they could get out on the front platform, because the door was open, that the other two doors would be closed so that they could not fall or jump off."

The learned judge then told the jury that the plaintiff was too young to be charged with personal negligence and that it was the duty of his parents to see that he was left in care of a competent nurse, and that if the person in charge of the children was an unsuitable person, an incompetent person and could not manage the children and it was an unwise thing for the parents to put the children in her care, then the parents were guilty of negligence which was chargeable to plaintiff and he could not recover. He also instructed the jury that if the nurse, although competent, was negligent in caring for the children, the plaintiff could not recover. He continued: " But here this plaintiff claims that this nurse was competent; that the parents are not guilty of negligence. Then it is claimed by the defendant that the nurse herself was guilty of

negligence, not only incompetent, but negligent, and even if she was competent she did not exercise the proper care that she was capable of exercising over the boys, but that she was not capable of exercising reasonable care over them, and that she was absolutely guilty of negligence in caring for them, in not making them sit down, in not keeping control over them. Well, if the nurse to whom the plaintiff was entrusted was guilty of negligence which contributed to the accident then you cannot find a verdict for this plaintiff. But here, as I have already sufficiently stated, this plaintiff claims that the nurse, while she was doing all that a reasonably careful nurse would do in directing them where to sit and what to do that they ran around the car a little bit too lively for her, and they claim that this defendant's employees should have given this plaintiff, by reason of his age, some word or warning to keep back, not to encourage them to run out on the front platform, and he not only failed to do that but the motorman in particular failed to close the door and latch it, and that that is negligence on the part of the defendant and operated to this extent to free from any contributory negligence on the part of the parents or the nurse; and if that is so and you find such a state of fact by a fair preponderance of proof, why the plaintiff would be entitled to a verdict at your hands, but not otherwise." The jury, having retired, returned to the court for further instructions, and the foreman said: " What we want to know is in reference to, whether the nurse was capable of caring for these two children; as a nurse for the children." The court said: " I think I will ask a question first of the foreman. Do you mean in reference to the competency of the nurse, whether she was a competent person? Or do you mean whether or not if she was competent she was negligent afterwards? The Foreman: That is the idea, afterwards. The Court: Why the nurse was obliged to use all ordinary care in the charge of the children such as a usually prudent nurse would exercise on such an occasion; and if she failed to use such ordinary care and was otherwise negligent then the plaintiff is chargeable with her negligence; if she did use the care of an ordinary nurse in the charge of the children and yet, nevertheless, that the children in their playfulness ran away from her,  *  *  *  ran to places of danger in the car, would

not come back though she tried to attract them back, then she was not guilty of negligence; that she used the usual ordinary care as a nurse, and the trouble was that the children were too quick and too playful for her. * * * Now what should have been done? May be you will find that he should have told the child that it was dangerous and to step back. May be it would be that they could make him safe in some other way. But this plaintiff says that what they should have done was to have closed the doors provided for that purpose and locked the inner door on the motorman's side. Now is this a case where the occasion called for some such action as that, that particular action, closing one of those doors on the part of those employees, and did they fail to do it; because if they failed to do it, when it was reasonably sure that it was dangerous for the child and as prudent men they would have done it if they failed that failure was negligence for which the defendant would be liable; but if it was a case where they were frolicking around the car, and ordinarily prudent employees of the defendant believed and had the right and the reasonable right to believe that they were safe under the guidance of their nurse, then they would not be required to act at all, and they would not be guilty of negligence and the defendant would not be liable. The Foreman: That makes it entirely clear your Honor. The jury understands it. Mr. Crumb: I ask your Honor to read over to them the requests I stated on the question of law. The Foreman: I do not think it is necessary. The Court: As that is all the gentlemen asked for they may again retire with the understanding that if there is anything further they want they can ask for it. Mr. Crumb: I except to the supplemental charge as a whole and to each and every part of it. I further except specifically to the portions thereof that define the duties of the nurse toward the children, and her responsibility for them, and the defendant's liability if the child was injured by his own act while in her charge, and referring to places of danger. I also except to the statement as to the law governing the liability of the defendant under the circumstances in the case."

We are of the opinion that the learned trial judge imposed too onerous a duty upon the motorman and conductor. They were not obliged to act as assistants to the nurse in charge of

the two children and to operate the car solely with reference to them.  The primary duty of caring for the children was upon the parents or their representative who had their immediate custody.   To say that the conductor and motorman should have closed and latched the doors of the car, and devoted their attention to admonishing the plaintiff and his brother, loses sight of their obligations to the other passengers.   It may be that they should have stopped the car and obliged the nurse and her charges to leave it, but this was not suggested as a basis for the charge of negligence made against them.   To say that the motorman operating his brakes and bringing the car to a stop at the terminal was bound to anticipate that children five and seven years of age would be permitted to come out of the car behind him unattended, and that reaching the platform they would jump from the car while it was in motion, and that the five-year-old boy would jump on top of his brother in such manner as to throw him back under the car, is to hold him to unreasonable and extraordinary obligations not countenanced by law.   No one can be said to be negligent merely because he fails to make provision against an accident which he could not be reasonably expected to foresee.   (*Paul* v. *Consolidated Fireworks Co.,* 212 N. Y. 117, 121, citing *Dougan* v. *Champlain Trans. Co.,* 56 id. 1; *Loftus* v. *Union Ferry Co. of Brooklyn,* 84 id. 455; *Burke* v. *Witherbee,* 98 id. 562; *Cleveland* v. *N. J. Steamboat Co.,* 125 id. 299; *Reiss* v. *N. Y. Steam Co.,* 128 id. 103.)   The nurse, thirty years of age, was apparently old enough and strong enough to restrain the children; she had been employed by the parents of the plaintiff a little less than a year.   She spoke broken English and this was the first occasion on which she had attempted to take the two boys out together.   On one occasion during the trip she left her seat in the car and recovered her charges, but they laughed at her and got away a second time.   She remained in her seat.   The record contains the following: " Q. Did they start at that time and run off the front of the car?   A. When they left me they went right out to the motorman.   Q. What did they do then? A. They was talking to the motorman and the motorman was laughing, the door open and the children jumped off.   Q. Did you leave the children out there at that time?   A. I couldn't hold them, there was two children.   Q.

And you couldn't control them, is that right? A. No. Q. Then you weren't able to control those two children, that is what you want us to understand? A. No, sure I couldn't." The learned trial judge told the jury that the plaintiff claimed that the defendant's employees " should have given this plaintiff, by reason of his age, some word or warning to keep back, not to encourage them to run out on the front platform, and he not only failed to do that but the motorman in particular failed to close the door and latch it, and that that is negligence on the part of the defendant and operated to this extent to free from any contributory negligence on the part of the parents or the nurse; and if that is so and you find such a state of fact by a fair preponderance of proof, why the plaintiff would be entitled to a verdict at your hands, but not otherwise." We are unable to find any evidence in the case that the motorman or conductor encouraged the plaintiff to run out on the front platform, and in no case would negligence on the part of the two railroad employees, if proven, free the parents or the nurse from contributory negligence as stated by the learned trial justice.

We think the verdict is against the weight of the evidence as to negligence on the part of the motorman and conductor and absence of contributory negligence on the part of the nurse, and we are, therefore, obliged to reverse the judgment and direct a new trial of the action.

But there are other exceptions urged by the appellant which call for consideration, in view of the new trial to be had. It appears that the case had been tried before, resulting, as we infer, in a disagreement. The second trial, which is now before us for review, took place in January, 1919. The nurse in charge of the children was examined as a witness for the plaintiff on the first trial. On this second trial the learned counsel for plaintiff proceeded to read the testimony of the witness from the minutes of the former trial, as he said, " pursuant to section 830 of the Code of Civil Procedure." The following colloquy took place between the court and defendant's counsel: " Mr. Crumb: I object, upon the ground that there has been no effort made to produce this witness at this trial. This woman was a nurse in charge of these children at this time and it is a very important feature of this case,

from our standpoint, that she was grossly careless and negligent in the performance of her duties; and I submit that the jury have the right to see this woman and to make use of their eyes as well as their ears in coming to a conclusion as to whether she was a proper individual to put in charge of these children. On the further ground that there has not been sufficient foundation laid for showing compliance with section 830 of the Code; and that there has not been sufficient proof of the absence of this witness from the State to warrant the reading of her evidence at this time. The Court: Objection overruled. Mr. Crumb: Exception."

When this testimony was read there was no proof before the trial court that the witness was at that time a non-resident of the State of New York or that she was absent from the State. Nor was there any proof of effort made by the plaintiff to obtain her presence at the trial. The plaintiff insists that proof that at the time of the first trial the witness was a resident of the State of Vermont, that she came to this State at the request of the father of plaintiff to testify and that after testifying she was supplied with money and declared her intention to return to Vermont, was sufficient. Plaintiff's father testified to these facts, and he testified: " Q. That was the last you saw of her? A. Yes, sir. Q. Do you know of your own personal knowledge what has become of her since? A. No. Q. Have you made any efforts to get her here on this trial? A. No." On this preliminary proof the learned trial judge overruled the defendant's objection to the reading of the testimony. Some time later in the trial plaintiff's father was recalled, and over the objection and exception of defendant testified that since the reading of the testimony, at the suggestion of plaintiff's trial counsel, he had communicated with Rutland, Vt., to ascertain if she (the witness) was there. " Q. Did you get a telegram back as to her being there? Mr. Crumb: Objected to as irrelevant, immaterial and improper. The Court: The objection is whether you can make a telegram evidence. Mr. O'Neill: I suppose if they insist on it. Q. Did you receive this telegram (shows witness paper) ? [Same objection. Objection overruled. Exception.] A. Yes, sir. Q. Did you telegraph to Mr. Robinson to ascertain if Dcimba was there? A. Yes, sir. [Objected to as irrelevant and

immaterial. Objection overruled. Exception. Telegram marked ' For identification Plaintiff's Ex. 2.] Mr. O'Neill: I will show this to Mr. Crumb. Perhaps he will concede it. Mr. Crumb: I do not think I will. Mr. O'Neill: I offer it in evidence. [Objected to. Objection sustained. Exception. "]

The fact that after the testimony was admitted in evidence over defendant's objection and exception, plaintiff's father at suggestion of counsel telegraphed to some man named Robinson in Rutland, Vt., to ascertain if the witness was in that city, and secured a reply, does not appear to help the situation very much. We are not informed who Robinson was, the telegram sent to him is not offered in evidence, the telegram in reply was excluded. Section 830 of the Code of Civil Procedure, so far as it relates to the objection and exception under consideration, reads as follows: " Where a party or witness has died or become insane or, being a nonresident of this State has departed from the State * * * since or during the trial of an action now or hereafter pending, * * * the testimony of the decedent or insane person or of such absentee, * * * taken or read in evidence at the former trial or hearing, * * * may be given or read in evidence at a new trial or hearing or at a continuation of the same trial or hearing * * * or upon any subsequent trial or hearing, * * * between the same parties to such former trial or hearing or their legal representatives, by either party to such new trial or hearing."

We think that the crux of this section is that the witness whose testimony is sought to be read is an absentee at the time the evidence is offered. The common law permitted the evidence of a deceased witness to be read as between the original parties or their privies (*Shaw* v. *New York El. R. R. Co.*, 187 N. Y. 193), but this species of evidence was admitted *ex necessitate*. (*Jackson* v. *Bailey*, 2 Johns. 17.) It was necessary to show that the witness was dead, absence from the State was not enough because he might be found and examined upon commission. (*Wilbur* v. *Selden*, 6 Cow. 162; *Crary* v. *Sprague*, 12 Wend. 41.) When the Legislature extended the privilege to absentee witnesses, we think they meant witnesses who were actually absent from the State at the time their testimony was offered. The fact that the

witness had come down from Vermont to Westchester county
in December with her husband and children, and had been
given money to return to Vermont, that she had been seen
at a railroad station in Yonkers waiting for a train — these
facts furnish no evidence that she was absent from the State
a month later. *Non constat*, she might have been in the
State of New York at the time of the second trial. If such
was not the fact, there should have been no difficulty in
proving it, and in the case of this witness, whose personal
appearance and testimony were so important to the issues
before the jury, it would seem that at least some evidence
should have been presented showing efforts to procure her
attendance. We think it was error to permit plaintiff, without
notice to defendant, to omit calling her to the stand. In
*Knowles* v. *N. Y., N. H. & H. R. R. Co.* (177 App. Div.
262; 223 N. Y. 513), cited by the respondent, the question
was not considered either in this court or in the Court of
Appeals.

It appears that upon the first trial of this action the defend-
ant called as a witness one Shannon, the conductor of the
car upon which the plaintiff was a passenger. Upon the
trial now under review, the plaintiff after some few questions
to a witness concerning the length of defendant's railroad
and the location of double and single tracks along the route,
immediately called Shannon as his own witness upon the
pretense that he desired to prove by him the existence of
certain rules of the defendant corporation requiring the closing
of the vestibule doors while the car was in operation. This
was before any evidence had been adduced concerning the
happening of the accident. The witness denied knowledge
of such rules and this was followed by a disorderly and acri-
monious examination of the witness Shannon, who was accused
by the learned counsel for plaintiff of perjury and contradic-
tions of his testimony upon the first trial and of statements
made to the plaintiff's counsel. In *Power* v. *Brooklyn Heights
R. R. Co.* (157 App. Div. 400) we said: " In New York it
is reversible error to confront and discredit one's own witness
by the introduction of prior contradictory written statements."
Page after page of the record is taken up by this procedure
at the opening of the trial. While matters of this kind are

largely in the discretion of the trial court, such practice is not to be commended. And the attempt of plaintiff to prove by the parol evidence of Shannon and certain former employees of defendant the existence of a rule of the defendant railroad company, requiring the closing of the doors on the car, was contrary to law. (*Goodman* v. *New York Railways Co.*, BIJUR, J., 88 Misc. Rep. 95.) Oral testimony as to the contents of a writing is incompetent unless a proper foundation therefor is laid. (Wig. Ev. ¶¶ 1173–1200.) The only printed rule in evidence required the closing of the left-hand vestibule doors when the cars were operated on double tracks. But the learned trial judge permitted over objection and exception by defendant oral evidence from former motormen of defendant that a rule had been posted at the starter's box that both side doors as well as the doors behind the motorman must be kept closed and locked. But the posted rule, if there was such rule, was not produced or its absence accounted for. The defendant denied the existence of any such rule. The allegation in the complaint is that " the defendant negligently failed to make and enforce a rule requiring that the doors, and particularly the front left-hand door should not be opened until the car was stopped at the end of the line." We think the ruling of the court in admitting oral evidence of the alleged printed rule was reversible error.

The learned trial judge, over objection and exception by the defendant, admitted evidence that the plaintiff suffered from mastoiditis and had been operated on for that disease and that the accident was a competent producing cause for mastoiditis. The allegation of injury in the second amended complaint (*supra*) contains no reference to or suggestion of mastoiditis or an operation by reason of that condition. It was not a condition naturally resulting from the specific injury set forth in the complaint and should have been pleaded. (*Kurak* v. *Traiche*, 226 N. Y. 266, and cases cited.) We think the exception to the admission of this evidence requires reversal of the judgment.

The appellant complains of the conduct of plaintiff's trial counsel, alleging that his treatment of the conductor to which we have already referred was improper, illegal and prejudicial to defendant's rights to such an extent as to require

reversal of the judgment. In *Pedersen* v. *Union Railway Co.* (181 App. Div. 885) we reversed a judgment because of improper cross-examination by counsel for the plaintiff in that case. We said: " The cumulative effect of all these acts deprived defendant of a fair trial." But we hesitate to interfere in such matters because the trial judge should see that the litigants are given an orderly and decent trial of their disputes. We cannot approve the method adopted by the learned trial counsel in the case at bar. The printed record also shows constant interruption and contradiction of the defendant's attorney while the latter was presenting his requests to charge at the end of the case as well as consents to the requests interjected by defendant's counsel, and similar comment tending to nullify the effect of the court's instructions. A litigant should be permitted to present his requests to charge to the trial court in an orderly way and to obtain rulings from the court thereon without continued interruption, contradictions and acrimonious controversy such as the record here discloses. The trial judge may see fit to ask the views of opposing counsel in such matters, or they may be presented in a proper way to the judge. While we do not reverse the judgment because of the alleged misconduct, we think we should admonish the counsel that it should not be repeated.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

This court reverses the findings of the jury as to negligence on the part of the defendant and absence of contributory negligence on the part of plaintiff as contrary to the evidence.

RICH, PUTNAM and JAYCOX, JJ., concur; BLACKMAR, J., concurs in the result.

Judgment and order reversed and new trial granted, with costs to the appellant to abide the event. Settle order on notice.